## SARGENT *v.* MATHEWSON.

In an action on the case for harboring the plaintiff's minor son, if the defendant, knowing that the son had ran away from his father, board him in his family, and allow him to work on his farm as he pleases, and do this with the intention of aiding or encouraging, or with the knowledge that it aided or encouraged the son to keep away from the father, he is liable to the action.

CASE, for enticing away from his service and harboring the minor son and servant of the plaintiff.

It appeared in evidence that the boy had lived from early childhood with the defendant's father, in the State of Vermont, till the 25th of April, 1853, when the plaintiff, his father, took him home, intending to keep him. He was then about fourteen years old. He remained with his father, working for him as his other boys did, till the 5th of June, of the same year, when, without the knowledge or consent of the plaintiff, and without any procurement from the defendant, he left his father's service, intending to go to Unity, in this State. He called on the defendant and staid with him the first night, the defendant knowing that he had run away from his father; and the next morning the defendant furnished him with a pair of boots, and he left his house and went to Unity, and staid about a week, when he returned to the defendant's and remained there till the 2d day of July, working for him on his farm

Sargent *v.* Mathewson.

as he pleased. There was no evidence of any contract or agreement between the defendant and the boy, or that the defendant did anything but let him remain with him, boarding with him, and working for him at his pleasure.

Artemas Spaulding testified that about the first of July he went to the defendant's house, in Claremont, at the request and in company with the plaintiff. Found the boy at work in the field. The plaintiff staid back and did not go into the field. The men were hoeing; the boy was holding plow. Told the defendant that the plaintiff wanted the boy to go up—wanted to talk with him. The defendant said he wanted the boy to stay, and he would go up. The boy then started and made his escape across the river, and on his way met his father and had some talk with him. Asked the defendant to persuade the boy to go back. He refused; told him he ought to. As the boy came up the bank, the defendant made motions, and the boy left. The defendant said if we would give bonds not to carry the boy off, he would have him come back and talk with the plaintiff. The plaintiff refused to give bonds. The defendant said he had made up his mind to send the boy to school, but it would cost him something. He said he did not know but he was liable for keeping the boy; that he had furnished him with a pair of boots. Something was said about the boy's going back. The defendant said the plaintiff might set his heart at rest about getting the boy back; that he would go away and change his name.

In the cross examination, this witness said that the plaintiff said that he should not take the boy back unless he was willing to go; that he told the boy he need not go back unless he wished to.

James Lynch worked with the defendant; was there when the plaintiff and Spaulding came after the boy. The defendant said if they came after the boy, he ought to run for the woods; thinks this was in his presence; think the defendant said the 4th of July, if they came after the

boy, not to let them have him; think the defendant said he knew where the boy was when he was gone, but did not want to tell, for fear they would get him.

Julia Ann Chadburn saw the boy the 4th of July. After this had talk with the defendant. He said the boy was gone; had heard from him, and if he came back, wanted I should board him, and he would settle with me.

Ovid Chase testified that the defendant told him he saw the plaintiff and Spaulding coming, and knew they were after the boy, and he contrived some plan to have the boy get away, supposing they were after him. Asked the defendant what had become of the boy? He said he had been and got him a place.

On the part of the defendant, the boy himself testified that the defendant never held out any inducements for him to work or remain with him; that he remained there of his own accord, and that the defendant never advised him to keep away from his father, and that his father told him, when he came after him, that he did not intend to take him home unless he was willing to go.

The court instructed the jury that there was no evidence that the defendant was guilty of enticing the boy away from his father's house, when he left, June 5, 1853; that if he was liable at all it was for harboring the boy afterwards; and that if they believed from the evidence that the defendant afforded shelter and protection to the boy, with the view or intent of enabling or encouraging him to keep away from his father, or if he afforded such shelter and protection, knowing that it aided or encouraged the boy to keep away from his father, it was a harboring of the boy for which he would be liable.

The jury found a verdict for the plaintiff, and the defendant excepts to the foregoing instructions to the jury, and moves for a new trial.

*Williamson* and *Fullum*, for the plaintiff.

*Freeman & McClure*, for the defendant.

Sargent *v.* Mathewson.

PERLEY, C. J.   The following facts are found by the case:   The plaintiff's son, being about fourteen years of age, was in the charge and service of his father, and ran away from him.   The defendant, knowing this, allowed the lad to remain with him, to board with him, and to work for him as he pleased.   About these facts there was no dispute; and while the defendant thus kept and sheltered the boy, the plaintiff, his father, was deprived of his services and custody.   The fact that the defendant afforded shelter to the boy, is found by the case.   The ordinary effect of what the defendant did would be to assist and encourage the child in his illegal and undutiful course. But there was some contradiction in the evidence as to the influence which the defendant exercised over the boy; and perhaps the jury would have been at liberty to find that the defendant allowed the boy to remain with him from mere motives of kindness and charity, or in order that he might restore him to his father, or give his father an opportunity to recover him; and in that case, according to the instructions of the court, the defendant would not have been liable.   The court left the question of intent— the *quo animo*—to the jury, and instructed them that if the protection and shelter which the defendant gave the boy were afforded with the view or intent of enabling or encouraging him to keep away from his father, or with the knowledge that it aided or encouraged him to keep away from his father, it would be a harboring, for which the defendant would be liable.   The case finds facts from which it appears that the defendant actually harbored the plaintiff's minor son, and thus assisted him in remaining away from his father.   The question of intent and motive the court left to the jury, and of this we think the defendant has no reason to complain.

No question is made that the father, unless he has in some way forfeited or relinquished the right, is entitled to the services and custody of his minor child, and may

---

Sargent *v.* Mathewson.

---

recover damages against the party who deprives him of this right, by seducing away or harboring the child. The defendant argues that in this case the father relinquished and abandoned this right, or at least consented to the defendant's harboring the boy, because he said he did not intend to take him away unless he was willing to go. We are not able to view the case in that light. The father went for his child; he desired to see the child, and negotiated with the defendant for an opportunity to converse with him; he said he should not take the boy back unless he was willing to go. This has no tendency to show that the boy was not unlawfully harbored by the defendant, and the plaintiff deprived by it of the services of his child; for the complaint against the defendant is not that he detained the plaintiff's son from him by force, but that he encouraged and aided the son to persevere in a disobedient and undutiful disposition, which prevented him from voluntarily returning to his father's house. The point of the plaintiff's grievance is, that by harboring the child and encouraging him in remaining away, he made him unwilling to return and live with his father.

*Judgment on the verdict.*