State *v.* Farrar.

## State *v.* Farrar.

Where, upon a decree of divorce, the custody of a child of four years of age was assigned to the mother, and the father afterward, with a strong hand, seized the child, then in the mother's custody, and against her will, and carried it out of the State—it was *held*, that this constituted the statute offence of unlawfully and forcibly carrying the child out of the State, and that it was not necessary to prove expressly that it was done without its consent, inasmuch as in law the child was incapable of consent.

An indictment signed by the solicitor for the county is sufficient without averring the absence of the attorney-general.

INDICTMENT, charging the respondent with the forcible seizure and abduction of Gelietta Farrar, from Dover, in this county, on the 8th day of October, 1859, and the forcible removal of said Gelietta from the State without her consent and against her will. Plea, not guilty.

On trial it was proved that in 1853 the respondent was married to Angelia S. Huntress, of said Dover, by whom, in 1855, he had offspring, said Gelietta; that on the 19th of April, 1858, said Angelia petitioned this court for a divorce from him, on the ground of extreme cruelty and treatment injurious to health; asking also for alimony, and the custody of said Gelietta; that service of the libel having been duly made, the parties appeared at the June

law term, 1858, when the case was continued, and so from term to term until June law term, 1859, when a divorce was granted, and alimony and the custody of said Gelietta decreed to said Angelia; that on the evening of Saturday, October 8, 1859, which was very dark, cold and stormy, at about 8 o'clock, the respondent, in disguise, armed with a six barrelled revolver, loaded with powder, burst suddenly, and without notice, into the back door of the house where said Gelietta resided with her mother, in said Dover, and into the sitting-room where she was standing beside her mother, and pointing his pistol, which he held in his right hand, at said Angelia, discharged one barrel thereof at her, and then seizing said Gelietta, who was only four years and two months old, around the waist with his left arm, rushed with her, screaming, under his arm, toward the door, at which he had entered, first discharging another barrel of his pistol at the grandmother and an aunt of the child, who were hurrying in from the kitchen; that at or near the door said Angelia, her sister and mother, there being none but females in the house, caught hold of the clothes of said Gelietta, and endeavored to detain her; whereupon the respondent discharged another barrel of his pistol at them, and then ran, with the child still screaming under his arm, through the yard, discharging another barrel of his pistol on the way, toward the street, where an accomplice was waiting for them with a horse and carriage; that a young man, casually passing at the moment, hearing the screams of the child and cries of murder from the ladies near the house, attempted to approach the respondent, when he discharged another barrel of his pistol at him, and leaping into the chaise, with the child, drove rapidly with her about four miles into the State of Maine; that on the following Thursday the respondent and said Gelietta, whose hair had meanwhile been cropped short, and her clothes changed from a girl's frock and apron to a boy's jacket

State *v.* Farrar.

and pants, were discovered behind the chimney in the attic of a two-story house in North Yarmouth, Maine, twelve or fifteen miles from Portland, by the city marshal of Portland, by whom, after a severe and protracted scuffle and struggle, participated in by an officer from this State, the respondent was arrested; that the next day the respondent and said Gelietta were brought to Dover, and the child delivered to her mother, with whom she still remains.

The government having rested upon proof of these facts, the respondent objected to the maintenence of the prosecution, because enough had not been proved from which the jury could find the offence charged, to have been committed by the respondent, and also because a child of the age of said Gelietta could have no will or capacity to resist her forcible seizure, confinement and removal from the State, and therefore was not within the protection of either clause of the statute on which the indictment was founded. The court being of opinion that the facts proved tended to show the child to have been unlawfully and forcibly, at the age and in the manner stated, seized, confined and torn from the custody of her mother, where she had been placed by a decree of this court, and thus removed from New-Hampshire, ruled, for the purposes of the trial, that such unlawful and forcible seizure, confinement and removal from the State, if not proved, might be presumed under the circumstances to have been without the consent and against the will of said Gelietta; the respondent excepting.

The respondent then offered evidence tending to show that prior to the divorce between himself and his wife, and also after the removal of said Gelietta into Maine, she had manifested attachment and fondness for him; but the court excluded the testimony.

A verdict of guilty was thereupon taken by consent; which the respondent moved to set aside, and for a new

trial, by reason of supposed errors in the foregoing rulings of the court. He also moved in arrest of judgment, because the indictment was not properly authenticated, being signed by the solicitor, without stating the absence of the attorney-general, and because said indictment was otherwise defective and insufficient.

*Hamlin*, for the State.

I. The indictment is founded upon sec. 15 of chap. 227, Comp. Stat. The essential ingredients of the offence are, (1.) The acts done must be done without lawful authority. (2.) They must be forcible or secret. (3.) They must be against the will of the subject of the offence. (4.) The acts themselves may be confinement or imprisonment within the State, or carrying or sending out of the State, or seizing, inveigling or kidnapping, with intent to cause to be sent out of the State, or sold or held to service. The offence may be committed by " any person" against " any other person," without distinction of age, color or race. The statute has a much broader purview than the mere prevention of selling colored persons into slavery. *Commonwealth* v. *Blodgett*, 12 Met. 79.

Was the respondent " without lawful authority" in what he did ? Before the commission of the alleged offence he had been divorced from the mother, and the custody of Gelietta awarded to her. The court had full power to make such order or decree, for " courts of justice may, in their sound discretion, and where the morals or safety or interests of the child strongly require it, withdraw the infants from the custody of the father or mother, and place the care and custody of them elsewhere." 2 Kent Com. 205 ; Bish. on Mar. & Div., sec. 633 ; *DeManneville* v. *DeManneville*, 10 Ves. 52, 58 and 59 ; Story Eq. Jur., secs. 574, 581 ; 13 Johns. 418 ; Comp. Stat., ch. 158, sec. 12 ; *Whittier* v. *Whittier*, 31 N. H. 458. We contend, then, that a decree of the court giving the custody of a

State *v.* Farrar.

child to the mother, completely divests the father of all right of custody of the child, and vests the same in the mother, and that the law of the land protects the mother in the possession of this right as fully and completely against the father as against a mere stranger.

The second objection is the want of will and capacity of said Gelietta.

If this objection be well founded, then children of tender years are without the protection of the statute. That statute is understood to have been occasioned by the case of *State* v. *Rollins*, 8 N. H. 550. In that case the subject of the alleged offence was a boy six years of age. If the objection taken is well founded, then the legislature has omitted *to provide for the very case which occasioned its action. We submit that the true rule is, that the will of a child of tender years is presumed to be in accordance with the decrees of the court, if any have been made, and its duty and interest. No other rule will uphold the authority of the court and protect the interests of the child. *Rex* v. *Greenhill*, 4 A. & E. 624; *Commonwealth* v. *Turner*, 3 Met. 19; *Commonwealth* v. *Robinson*, Th. Cr. Cases 488.

II. The motion in arrest of judgment is probably founded on the 5th section of chapter 13 of the Compiled Statutes. Before the motion can prevail the respondent must show, (1.) that it is a part of the duty of the attorney-general to authenticate indictments by his signature; (2.) that the proper way to establish the absence of the attorney-general is by a statement to that effect appended by the solicitor to his signature on the face of the indictment. Neither of these positions is correct. The signature of the attorney-general is no necessary part of the indictment, nor is the drafting of indictments a necessary duty of his office. In so doing he is but the agent or servant of the grand jury, and the signature of the foreman is alone necessary to authenticate the indictment. Comp.

Stat. ch. 13, sec. 2 ; *State* v. *Squire,* 10 N. H. 558 ; *State* v. *Freeman,* 13 N. H. 488 ; *Thomas* v. *State,* 6 Mis. 457 ; *Mc-Gregg* v. *State,* 4 Blackf. 101. The proper way to show the absence of the attorney-general, if necessary, is by an entry upon the records of the court, by the clerk thereof. *Hite* v. *State,* 9 Yerg. 198.

*Sawyer* and *Wiggin,* and *Christie,* for the respondent.

BELLOWS, J. The offence charged in the indictment was an offence at common law, and also by the law of New-Hampshire before the Revised Statutes. In *State* v. *Rollins,* 8 N. H. 550, it was held that an indictment at common law may be maintained in this State for an assault, for false imprisonment, and for kidnapping. And it was held that to constitute the offence of kidnapping a child under ten years of age, actual force and violence is not necessary, nor transportation to a foreign country.

But the statute under which the indictment in the case before us is framed, includes in the offence of kidnapping the *intent* to carry the person seized out of the State. In this case the child, which was about four years old, was taken from its lawful custody with its mother, with a strong hand, and actually carried out of the State. The custody of the child having been, by a decree of this court, assigned . to the mother, that custody must be regarded, for all purposes, as lawful, even as against the father ; and he has no " lawful authority" to take the child from her. If he does so against her will, for the purpose of carrying it out of the State, it comes within the statute. The right of the father over the child was gone by the force of the decree, as much as his right over its mother, his former wife ; and the purpose for which he carried it away, whether to subject it to slavery or merely to his parental control, could not affect the question of guilty or not guilty, although it might affect the extent of

State v. Farrar.

the punishment. Beside the authorities cited by the counsel for the State, are *State* v. *Rollins*, 8 N. H. 550; Ros. on Cr. Ev. 465, 2 East's Crown Law, 429.

But it is said by the respondent that a child of such tender age could have no will or capacity to resist the forcible seizure, confinement and removal from the State, and that therefore she was not within the protection of either clause of the statute. We, however, cannot assent to such position. On the contrary, laws of this character seem to have originated in the especial purpose of furnishing protection to children. And we are disposed to hold that the child was incapable of consent to the seizure and removal, and that, being taken from its lawful custody, it must be deemed to have been taken without its consent as matter of law. It was so held in the case of a child ten years of age in *State* v. *Rollins*, 8 N. H. 565.

In the case of children of that age, when they are in the place of their lawful custody they are deemed to be free, but when taken away against the will of their rightful guardians, they are justly regarded as under illegal restraint. So it is held in proceedings on *habeas corpus*, and such is the law, we think, that governs this case.

The proof that the child had affection for the father was, therefore, rightfully rejected, as it could have no legitimate bearing upon the issue of guilty or not guilty.

If it were essential that the indictment should have the signature of the prosecuting officer, still we should not be inclined to hold that in affixing the signature of the solicitor, the absence of the attorney-general must necessarily be suggested. Indeed that is a matter of which the court would judicially take notice, as it was distinctly held in the celebrated case of *Rex* v. *Wilkes*, 4 Burr. 2527–2577. That was the case of an information by the solicitor-general. It was held that it was not necessary to aver a vacancy in the office of attorney-general. Lord *Mansfield* says, " that the attorney-general is a great officer of the

law and of this court, and the court take notice when the office is vacant, and by whom it is filled when full. They give credit to the solicitor-general when he sues for the king, that he has authority." So in this case, the court may properly take notice of the absence of the attorney-general, and that the solicitor acts in his place, especially when the court is called upon to certify that fact.

We do not, however, hold the signature of the prosecuting officer to be indispensable, although such is the usual and proper practice. At common law it was not required, neither was he accustomed to attend the investigations of the grand jury at all, and no change as to his signature is made by statute. *Anderson* v. *State,* 5 Pike 444; *McGregg* v. *State,* 4 Blackf. 101; *Thomas* v. *State,* 6 Mis. 457; *Keithler* v. *State,* 10 S. & M. 192.

There must, therefore, be

*Judgment on the verdict.*