Hillsborough,  
Nov. 8, 1916.

### FRANK J. GUEVIN v. MANCHESTER STREET RAILWAY.

A husband may recover damages at common law for physical injuries to his wife, resulting from another's negligence, *per quod consortium amisit;* and this right is not dependent upon his proving loss of service, nor is it affected by the married women's property acts, except as to the measure of his damages.

Whether a person who, in walking around the rear of a street car at night near a crossing with the intention of boarding the car, tripped over the protruding fender, was exercising due care, and whether the railway company by the position of the car and fender negligently caused a situation of danger was properly submitted to the jury.

CASE, by a husband for negligence resulting in the loss of his wife's services and society. Trial by jury and verdict for the plaintiff.

The plaintiff's evidence tended to prove that his wife was injured at about 10 p. m., October 2, 1911, near the corner of Manchester and Elm streets in Manchester. Elm Street runs north and south and Manchester Street east and west. The defendant's electric car ran north on Elm Street and turned east into Manchester Street, stopping beyond the corner for passengers. The rear fender protruded beyond the body of the car but it was in such a position on Manchester Street that every part of the car and of the fender was three or more feet east of the easterly line of the cross-walk. The car was well lighted, and an arc light was burning at the corner of Elm and Manchester streets. Mrs. Guevin, with her child, was proceeding south on the easterly sidewalk of Elm Street for the purpose of boarding the car. She took the child, which weighed about twenty-two pounds, in her arms just before reaching the corner, and then started from the curbing towards the car. In so doing she tripped over the protruding fender, which she did not see, fell and was injured.

Mrs. Guevin brought an action against this defendant in her own behalf for her injuries, and the present plaintiff was a witness for his wife at that trial, which resulted in a verdict for the defendant.

At the trial of the present action the defendant offered in evidence the record of that trial as follows:

"The Court (to Mr. Warren): You must be more specific; you must be more formal in your offer.

"Mr. Warren: I offer the record in the former suit for the purpose of showing that the writ in that action claimed, or set forth that she claimed, damages in that action for great expense in endeavoring to effect a cure, and that she introduced the testimony of Dr. O'Connor, through her own attorney, that his bill was February 4 or 5, 1913, at the time of the trial, $35; and that she introduced the testimony of one Dr. Knight of Boston; that his bill at the time of the trial was $5. I want to introduce the record of the result of that trial to show that those matters were litigated.

"The Court: You may show that there was evidence introduced at the former trial bearing upon those two bills. Beyond that I shall exclude all evidence.

"Mr. Warren: I except to the ruling for the purpose of showing that. I except to the ruling to prevent me from putting in the record of the former trial for the reasons last stated."

No evidence was introduced as to the amount of the bills of Doctors O'Connor and Knight for medical services.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, which was denied, and the defendant excepted.

The defendant's evidence tended to show that the fender had been pushed back into its place at the end of the route before starting on the trip, and that it was back in its place when the accident happened; that every part of the car was more than five feet east of the easterly line of Elm Street and the cross-walk; and that Mrs. Guevin did not come in contact with the fender or any part of the car.

Transferred from the September term, 1915, of the superior court by *Kivel*, J.

*James A. Broderick*, by brief and orally, for the plaintiff.

*Jones, Warren, Wilson & Manning* (*Mr. Manning* orally), for the defendant.

PEASLEE, J. 1. It could be found from the evidence that the fender projected unnecessarily, that the defendant knew fenders ought not to so project, and that it was an instrumentality wholly within the defendant's control. From this it could be found that the defendant was responsible for the condition there created. *Boucher* v. *Railroad*, 76 N. H. 91, 95.

The projecting fender was an unusual encumbrance of the street.

It appeared from the defendant's evidence that rear fenders were customarily pushed in so that travelers passing the rear of the car had no occasion to be on their guard against such obstruction.   It is a matter of common knowledge that travelers on foot who have occasion to cross a street do not confine themselves to the use of cross-walks, and that when they must diverge from a straight course they make the divergence as small as possible.   Hence it could be found that the defendant ought to have anticipated that persons on the north side of Manchester Street who wished to board this car would cross close to the rear thereof in order to reach the open door on the southerly side.   There was sufficient evidence of the defendant's fault.

Whether the plaintiff's wife when crossing the street in the night time in the manner above indicated, and carrying a child weighing twenty-two pounds in her arms, ought to have noticed and avoided the unusual encumbrance was also a question for the jury.   It is true, as the defendant argues, that the fender was as much a part of the car as the vestibule; but the distinction between the obligation to see and avoid a structure as large and visible as a house, and that to ascertain the presence of a small and unobtrusive piece of iron located a few inches above the ground is too manifest to require elaboration.   The question whether her negligence would bar the present action has not been considered.

2.  It is also urged that a nonsuit should have been ordered upon the ground that the husband has now no action for the loss of *consortium* caused by injuries negligently inflicted upon his wife.   It was held otherwise in *Booth* v. *Railway*, 73 N. H. 529; but in view of the facts that one of the authorities then cited by the court (*Kelly* v. *Railroad*, 168 Mass. 308) has since been overruled (*Feneff* v. *Railroad*, 203 Mass. 278; *Bolger* v. *Railway*, 205 Mass. 420; *Whitcomb* v. *Railroad*, 215 Mass. 440) and that the Connecticut court has followed these later cases (*Marri* v. *Railway*, 84 Conn. 9) the subject has been reëxamined.

Two main reasons are stated in these last cases, and in argument here, for the position taken.   It is said that the common law action for injuries to the husband's right called the *consortium* was based upon loss of service, and that while other elements might be considered in aggravation of damages, they did not constitute a cause of action; that unless loss of service were shown no recovery could be had.   No authority is cited to sustain this position.   It seems to be conceded that none exists.   But the argument is advanced

that the state of the law and of society was such that this must have been so, and it is pointed out that no early case upholding such a recovery is to be found. It is apparently true that no positive statement upon the subject, one way or the other, is contained in the early authorities. But much is to be found which is highly significant, and which tends to the conclusion that there was no such limitation upon the right.

The action itself was *per quod consortium amisit*, not *per quod servitium*. Loss of service as the only basis of legal right was then recognized and discussed in cases for the seduction of a child or servant, but nowhere is such a statement found as to the right of a husband to recover for injuries to his wife. Undoubtedly the term *consortium* included service, but it also included society, comfort and the sexual rights. In no early case is there a suggestion that any one of these is superior to any other as a basis for legal redress.

The husband recovered "sur le prejudice que le baron ad sustaine, viz.—le perder del' company & comfort que un feme port a sa baron." *Guy* v. *Lusy*, 2 Rolle, 51. The action was "for the particular loss of the husband, for that he lost the company of his wife, which is only a damage and loss to himself, for which he shall have this action, as the master shall have for the loss of his servant's service." *S. C. sub nom. Guy* v. *Livesey*, Cro. Jac. 501.

At a later date, in a suit for negligently overturning a stagecoach, whereby the plaintiff was injured and his wife was killed, "It appeared that the plaintiff was much attached to his deceased wife; and that, being a publican, she had been of great use to him in conducting his business—But, Lord Ellenborough said,—the jury could only take into consideration the bruises which the plaintiff had himself sustained, and the loss of his wife's society, and the distress of mind he suffered on her account from the time of the accident till the moment of her dissolution." *Baker* v. *Bolton*, 1 Camp. 493.

The same general rule was long ago applied in this state in an action for negligence. "The damages to her husband, from the loss of her services and society, and the expenses of her cure, follow uniformly and by legal necessity from the relation of husband and wife, which entitles him to her services and society, and charges him with her support." *Hopkins* v. *Railroad*, 36 N. H. 9, 14.

These and other cases fully justify the statement in *Marri* v. *Railway*, 84 Conn. 9, 13, that "the law has, however, never been solicitous to distinguish between these different elements of damage or to separate them."

"The older and more recent text writers unite in stating that in an action *per quod consortium amisit* recovery might properly be had for the husband's loss, whether it partook of the one character or the other." *Ib., p.* 14. The several rights involved all stood alike, and the conclusion seems irresistible that the existence of any of them was sufficient. In cases for the seduction of a daughter the law did take pains to distinguish, for the reason that loss of service was thought to be essential to the maintenance of the action, although the substantial damages might be of another character. No such reason existing here, there would be no occasion to call attention to a distinction which did not exist. Upon the whole matter, it is reasonable to conclude that the theory that there can be no recovery for loss of *consortium* without proving loss of service is the modern idea.

But if loss of service is essential, the cause of action has not been destroyed, since some right to services still remains in the husband. As to this it is urged that the husband's right is not now entitled to protection in this class of cases because the right is merely one to receive services voluntarily rendered, that the wife is not now obliged to work for him; and as he cannot demand her services, neither should he be allowed to complain of being deprived of them. But he had no higher right at common law. While the books abound in statements that the wife's services are the husband's, and that it is her duty to render them to him, he had no legal remedy if she chose to refuse performance of that duty. His legal right as against her was to such service as she chose to perform for him and to the proceeds of such service as she chose to perform for others. This right was based entirely upon an unenforceable obligation upon her part. His right to enforce obedience by personal chastisement, had disappeared long before the adoption of the married women's acts. Even in Blackstone's day it was only the lower classes who still claimed and exercised "their ancient privilege." 1 Blk. Com. 445. For her refusal to perform there was no remedy. Notwithstanding this, the husband has always been entitled to recover from third persons whose wrongful acts rendered her less capable of performance. "He retains the unmodified right to her conjugal society, even if her refusal to recognize this right affords him no ground for absolute divorce, and he may recover damages for loss of consortium when caused by injuries to her person through the wrongs of others, as well as for criminal conversation with her." *Nolin* v. *Pearson,* 191 Mass. 283, 286.

To dispose of this feature of the situation, it is argued that a new distinction should now be made between the husband's right to recover for intentional and unintentional injuries to his marital rights. It is conceded that some right still exists; but, because the original right has been reduced by the married women's acts, it is held that the right to recover for a negligent injury to it has been taken away. And this too in view of the fact that the service which still belongs to the husband is the same service "which the law had in contemplation" when the admittedly sound rule permitting a recovery was announced.

The married women's acts do not deal with the remedies of which the husband may avail himself. So far as his rights still exist he has all the remedy he ever had. If a substantial part of a former right is left, the old remedy remains also. The only sound reason for denying the remedy is that the right no longer exists.

The term *consortium* as used at the common law to describe the husband's marital rights included three elements,—service, society, and sexual intercourse. It is conceded everywhere that any injury to or detention of the wife which interfered with the first of these rights gave the husband a cause of action, as did the infringement of the last by the debauchment of the wife. Until within recent years all American courts have assumed and held that injuries to the second element were also entitled to protection. The great weight of authority is still the same way. "From before the days of Blackstone down to the present time, the authorities, English and American, are, without well-considered exceptions,  .  .  .  to the effect that the husband's recovery is for the loss or impairment of his right to conjugal society and assistance, and ordinarily, when the word 'services' is used, it signifies wifely services, such as are due from her, and includes the idea of her society." *Selleck* v. *Janesville*, 104 Wis. 570, 577.

The Massachusetts court has put the matter even more strongly. "A husband is not the master of his wife, and can maintain no action for the loss of her services as his servant. His interest is expressed by the word *consortium*,—the right to the conjugal fellowship of the wife, to her company, coöperation and aid in every conjugal relation." *Bigaouette* v. *Paulet*, 134 Mass. 123, 124.

But, in reliance upon *dicta* of English judges, a Canadian judge denied the right in 1897. *Lellis* v. *Lambert*, 24 Ont. App. 653,— opinion of *Osler*, J. A. How foreign the whole viewpoint of the opinion is to that obtaining this side of the border is shown by the

statement that "The action of the husband against the adulterer is one which has always been regarded as a blot upon English jurisprudence and social manners." *Ib., p.* 662. Approaching the question in this attitude of mind, it was natural that the husband's right of action for alienation of affections should be denied. "The loss of a wife's affections not brought about by some act on the defendant's part which necessarily caused or involved the loss of her *consortium*, never gave a cause of action to the husband. His wife might permit an admirer to pay her attentions, frequent her society, visit at her home, spend his money upon her, and by such means alienate her affections from him, resulting even in her refusal to live with him, and, so far as she could bring it about, in the breaking up of his home, and yet, there being no adultery, and no 'procuring and enticing' or 'harbouring and secreting' of the wife, no action lay at the suit of the husband against the man." *p.* 664.

These statements have been treated as though they were the ground of the decision. They were not. They are merely the views of Mr. Justice *Osler.* The other two judges who delivered opinions expressly put their conclusion upon the ground that the common law gave the wife no such action nor had the Canadian statute done so. They express no concurrence in the views of Justice *Osler,* although he concurs in theirs.

In *Houghton* v. *Rice,* 174 Mass. 366, the case is relied upon as holding that there was no action for alienation of affections at common law. That was a suit by the wife, and *Lellis* v. *Lambert* is authority for the proposition that she had no such action. But in *Houghton* v. *Rice* the court brushed aside all common law distinction between husband and wife in this respect, and declared that even the husband had no cause of action. As in the opinion of Justice *Osler,* the later case is barren of authority for the assertion made. *Houghton* v. *Rice* and the *dicta* in *Lellis* v. *Lambert* are the only foundation, so far as authority is relied upon, for the underlying theory upon which the late Massachusetts and Connecticut cases are based.

The suggestion that the late American authorities permitting a recovery in this class of cases treat the term *consortium* as excluding the idea of service, involves a misconception of the well considered cases. What these authorities hold is that there may be an actionable wrong to the right of *consortium* without loss of service, in the ordinary sense of the term. This certainly has always been the law as to actions for criminal conversation (*Bigaouette* v. *Paulet,* 134

Mass. 123), and it by no means involves the proposition that service is not included in the general idea of *consortium*. Because damages may be recovered for impairment of one element of a general right, it does not follow that there are not other elements equally protected by the law. And the abolition or modification of one element by legislative action ought not to be treated as destroying or impairing other elements.. *Nolin* v. *Pearson*, 191 Mass. 283.

It is further urged that as to the incidents of *consortium* other than service the common law gave a remedy for their destruction, but none for their impairment. On its face the proposition seems at variance with the general policy of the law. If a husband is entitled to his wife's affections and to recover compensation from him who steals them, reason and justice seem to require that he should be entitled to damages from one whose illegal efforts in the same direction are partly successful. Indeed it might be a difficult matter to define what was meant by total alienation. Must the state of the wife's mind be one of active dislike for the' husband, must it be certain the alienation is permanent, will utter indifference to him be sufficient, or would a remaining regard like that for mankind in general defeat the action?

In the matter of her society and comfort, other similar questions arise. And there is one satisfactory and logical answer to them all. The husband is entitled to the whole of his wife's marital affection, and to the whole of such society and comfort as her physical state and mental attitude render her capable of affording him. He who steals any substantial part of that affection, or disables her physically or mentally from rendering such aid and comfort, is guilty of an infringement of the husband's rights and should be required to make compensation. No case holding the contrary has been found save those which have been decided within twenty years.

The statement in *Marri* v. *Railway*, *supra*, that the acts complained of "must be necessarily destructive of" the rights involved is contradicted by other cases in the same state. Precisely the reverse of this proposition was decided to be the law in an earlier Connecticut case. The question was directly involved, and the case is apparently approved in the one above cited. The suit was for alienation of a husband's affections, accompanied by adultery. It was urged as a defence that the plaintiff and her husband continued to live together as husband and wife. "Whatever may have been the measure or quality of the remnant of conjugal affection and society permitted to the plaintiff by the defendant, as a matter of fact,

and of law as well, the plaintiff has been deprived of the conjugal
affection and society which the marriage contract entitled her to
enjoy and required her husband to give; . . . a valuable
right, absolutely sole in her and incapable of division, has been in-
jured." *Foot* v. *Card*, 58 Conn. 1, 11.

The short answer to the contention now under consideration is
well stated by *Rowell*, J. in *Fratini* v. *Caslini*, 66 Vt. 273: "As to the
claim that there is no such thing as partial alienation of affections, it
is enough to say that experience and observation show the fact to be
far otherwise."

The other argument chiefly relied upon is that if this action is
sustained the defendant will be subjected to the payment of double
damages. Since she can sue and be sued "as if she were unmarried"
(P. S., *c.* 176, *s.* 2), it is argued that her damages will be measured
without regard to her marital status. This involves a misconception
of the true measure of her damages. She is to recover for injury to
the rights given to her "as if she were unmarried"; but this does
not mean that she has been divested of all marital duties and obliga-
tions, either legally or morally. The statute does not profess to create
new rights, but to give to the wife the rights which her husband
theretofore could claim through her or to give vitality to rights there-
tofore dormant because of her inability to sue. It does not under-
take to transfer from husband to wife rights which were theretofore
his in the strict sense, that is, rights for the violation of which he
must sue at common law without joining her as plaintiff. Her
services for others, were of the class in which she might be joined as
plaintiff. *Weller* v. *Baker*, 2 Wils. 414, 424. But her services for
him were not. "If the battery, imprisonment, or malicious pros-
ecution of the wife, deprive the husband for any time of her company
or assistance, or occasion him expense, he may and ought to sue sepa-
rately for such consequential injuries." 1 Chit. Pl. (16 Am. ed.) 83.
These latter rights remain in the husband. He is still liable for her
support, and has the right to expect that she will render for him
those services which practically every wife does render in a greater
or less degree. So far as the evidence shows a probability that those
services would have been performed but for the injury, the loss is the
husband's. *Filer* v. *Railroad*, 49 N. Y. 47.

Her recovery is limited because of the fact that the loss of that
part of her capacity to earn money is not a damage to her. As to
that, she has lost nothing which was of value to her. "If she is
interfered with in her business transactions, and for that reason

unable to earn what she otherwise would have earned, the damage is personal to her." *Normile* v. *Company*, 57 W. Va. 132, 134. But if she voluntarily performed services for her husband, the impairment of capacity "was his loss, and not that of his wife." *Standen* v. *Railroad*, 214 Pa. St. 189, 200.

"The wife has the same right to give to her husband her service either in the household or in his business as she had before the passage of the statute, and the same obligation rests upon her to discharge her duty to her husband. . . . There might be circumstances existing which would entitle the wife, in an action for damages, to recover for the value of her own services. . . . In other words, the husband is entitled to recover for the damage sustained on account of the loss of the services of the wife, and the value of her services, and loss sustained by reason of her inability to perform them, must necessarily depend on the character and value of the services which she is capable to perform, and is accustomed to perform for the husband." *Citizens St. Ry. Co.* v. *Twiname*, 121 Ind. 375.

The rule as to her damages is not peculiar to the relation of husband and wife. It may apply to any person so circumstanced that there is no probability he or she would ever desire to use for profit the power lost or impaired. It may apply in the case of a man as well as in that of a woman. Suppose a father who is without means lives with his son, who provides the father with every luxury, and will probably continue to do so. The father's injury renders him incapable of hard manual labor. But for it, he could have worked as a ditcher and earned $2 a day. He is not entitled to substantial damages on this account, for the simple reason that this loss is to him no substantial injury. So it would be with a daughter who lived with wealthy parents and neither performed nor was likely to perform manual labor, because of her family relations. And so it must be with the wife who lives with her husband, cares for his household and will continue to do so as long as the relation exists. True it is that she might abandon her family duties and earn money, as in the supposed cases the father or the daughter might. But the evidence not warranting a finding that they would have done so but for the accident, there is no proof of loss resulting to any one of them on this account.

The rule under the statute creating liability for wrongfully causing death (*Carney* v. *Railway*, 72 N. H. 364; *Imbriani* v. *Anderson*, 76 N. H. 491) has no application to this class of cases. That statute

in terms makes earning capacity the test, and in that respect differs from the common law. See *Dillon* v. *Railway*, 73 N. H. 367, 368.

The argument from the assumption that the wife will recover for all loss of capacity to earn money has no force here because the true rule is that she does not so recover. The aggregate amount of the verdicts recovered by the husband and wife on account of loss of her capacity for service, is only equal to the total loss of capacity. What she recovers for he does not, and *vice versa*. *Standin* v. *Railroad*, 214 Pa. St. 189.

It is said also that to permit the husband to recover in this class of cases "carries legal refinement too far into the region of the impractical, in an attempt to save a principle which does not belong to conditions which now exist," that "the law has never undertaken any such investigations, has never countenanced any attempt to measure pecuniarily such a loss." *Marri* v. *Railway*, *supra*, *p.* 23. If this were true, it would follow that there could no longer be a recovery for loss of society in suits for enticement and the like. If the law never undertakes such investigation nor countenances any attempt to measure the value of this right, of course compensation can never be awarded for its loss or impairment. The case of *Foot* v. *Card*, 58 Conn. 1, shows that the law is otherwise in Connecticut, and the Massachusetts authorities are the same way.

Another suggestion is that as the wife's disposition towards her husband has not been changed he ought not to be heard to complain that she has been rendered incapable of doing for him the household duties she would willingly perform if she could. The mere statement of the argument discloses its unsound logic; and it seems especially ill adapted to fortify the argument that recovery must be refused because the elements of damage claimed are too refined for legal mensuration. The wife's affections are certainly more difficult to translate into terms of money value than are her household services, and the argument that the more easily valued element cannot be valued because the more difficult to value is not involved in the computation carries no weight.

That the damage to this plaintiff could not have been foreseen by the defendant, is not a defence. The test in cases for negligence is to inquire whether the resulting damage was "a direct consequence of the defendants' tortious act, without regard to whether the particular damage could or could not have been foreseen by them." *Whittemore* v. *Railroad*, 77 N. H. 61, 63.

Finally, it is said that if in view of modern statutes the husband

can still recover for injuries negligently inflicted upon the wife it must follow that she can in like manner recover for injuries to him. The question is not here involved except incidentally and as a test for the soundness of the conclusions reached. But it may be remarked that notwithstanding the changes which have been made the husband is still the head of the family, and in many ways represents its interests. For example, it is not likely to be claimed that the wife now has the same right as the husband to sue for the seduction of their daughter. Again, the duty to support the wife rests upon him, and she has in this way a substantial, though indirect interest in what he recovers.

The general question has been examined and considered independently of the authorities in this jurisdiction. Historically, upon the authorities at large and upon principle, it seems to be well settled that the husband's action for negligent injury to the *consortium* was not dependent upon his proving loss of service, that any substantial injury to marital rights is actionable, that the husband still has a limited but yet substantial right to the wife's services and that the application of the true rule of damages does not permit any double recovery. The decision in *Booth* v. *Railway*, 73 N. H. 529, is reaffirmed.

3. The record of the trial of the wife's suit for damages caused to her by the same accident was offered to show that certain expenses of her illness were then claimed by her. The record was ruled in to the extent of the items specified, but beyond that it was excluded. The defendant now argues that if the record showed that the husband was a witness in that suit and testified as to the wife's loss of earning capacity it would bar him from a recovery for the same items here. It is not necessary to consider the soundness of this argument, for the evidence was not offered for that purpose. It was not suggested at the trial that the record would disclose any such state of affairs.

*Exceptions overruled.*

All concurred.