WARREN COUNTY COURT OF COMMON PLEAS.

IN THE MATTER OF THE PETITION OF JAMES C. KELSEY.

Decided February 13, 1941.

For the petitioner, *Harry Runyon* and *Harlan Besson.*

For the respondent, *Claude E. Cook,* prosecutor of the pleas, and *Alfred W. Seiss.*

PRALL, C. P. J. (Presiding on request pursuant to statute.) This is a *habeas corpus* proceeding. The petitioner, James C. Kelsey, was committed to the custody of the sheriff and keeper of the common jail of Warren County on sworn complaint that he was a fugitive from justice from the State of Illinois. He was charged on oath by his divorced wife, Florraine W. Kelsey, with having, on or about July 8th, 1939, kidnapped his minor child, Rosanna, aged four, without then and there having the consent of the said Florraine W. Kelsey. Some time thereafter petitioner, having been indicted on a kidnapping charge and on a conspiracy charge in Cook County, Illinois, and the Governor of Illinois having requested his extradition, the Governor of New Jersey, Hon. A. Harry Moore, issued warrants for his apprehension, and he was deprived of his liberty. There are two extradition proceedings, the one based upon a charge of kidnapping, and the other upon a charge of conspiracy, and by consent of counsel both cases were considered together, since they arose out of the same transaction and questions of law and of fact common to both were involved.

The traverse filed in the *habeas corpus* proceedings by the petitioner denies the allegations of the return and shows that under the terms of a decree of the Circuit Court of Cook County, Illinois, dated March 8th, 1937, it was provided, *inter alia,* that Florraine W. Kelsey, the defendant named in the decree, and James C. Kelsey, the petitioner named in said decree, have the care and custody of the minor child, Rosanna, in the manner provided by paragraph 21 of said decree, and that on July 8th, 1939, with the written consent of the mother, Florraine W. Kelsey, petitioner took the child from Illinois to New Jersey. After the arrival of the child in New Jersey, he discovered that her physical condition was very poor, and after having submitted her for examination to competent physicians, learned that she suffered from malnutrition and other ailments, and that it would require many months of careful treatment under competent medical supervision to restore her to her normal health, and that it was then decided not to take the child back to the State of Illinois

because by doing so petitioner believed her life would be in danger.

The language of said decree providing for custody of the child is as follows:

"It is further ordered, adjudged and decreed that the defendant have the care and custody of the minor child of the parties hereto, until the further order of the court, subject to the right of the plaintiff to see and visit with said child at all reasonable times, and the plaintiff to have the custody and control of the minor child for a period of two months during the summer of each year, during which time the defendant shall have the right to see and visit said child at all reasonable times;"

The documents annexed to the request for extradition and made a part thereof include copy of the indictment, copy of the paragraph above quoted from the decree, and copy of the statute upon which the indictment is founded, and that law as set forth contains a proviso to the effect that it "shall not extend to a parent taking his or her minor child, unless such parent is deprived of the right to have the custody of such child by the order of a court of competent jurisdiction." The indictment alleges that the crime was committed on July 8th, 1939, in Cook County, Illinois.

The inquiry seems to narrow to the question as to whether upon the face of the record in the extradition proceeding, the defendant, Kelsey, could possibly have been guilty of the crime charged in the indictment under the statute in question upon the date alleged. From this record it would seem to be apparent, without danger of contradiction, that the defendant, Kelsey, had the right to the custody of his minor child on July 8th, 1939, and that the statute in question excepts from its provisions a parent having such right of custody, and that, therefore, no crime was possibly committed by Kelsey, as alleged. "If the commitment be * * * for a matter for which by law no man ought to be punished, the courts are to discharge." *In re Rose,* 122 *N. J. L.* 507, 509; 6 *Atl. Rep.* (2d) 388.

Moreover, in addition to what was shown on the face of the record, proofs were taken which supported the allegations

of the traverse. This testimony was uncontradicted. It appeared that on or about July 8th, 1939, Mrs. Florraine W. Kelsey had written a letter to her husband which was as follows:

"Saturday, July 8th, 1939. Dear Jim: Since you have offered to give me the usual check for Rosanna, I will agree to let you take her to New York City on a three weeks' vacation with the consideration that you let me hear from her at least once a week. Mrs. Florraine Kelsey."

Although there was no provision in the divorce decree requiring such permission, nevertheless, it appears to have been given. This letter was introduced in evidence by consent.

It further appeared by the testimony that proceedings had been taken before the Court of Chancery of New Jersey relative to the child's custody and a rule to show cause had been issued by the Chancellor which, among other things, forbade the removal of the child from the State of New Jersey.

The petitioner further testified that he had retained the child in the State of New Jersey because he learned that his former wife had not been a good mother to the child, but farmed the baby out in a poor section of the town, while she lived in a good section of the town, and that an examination of the child by a physician confirmed his views as to her physical condition. This is important because a careful scrutiny of the evidence satisfies the court that the intent of the petitioner to retain the child in his custody arose while he was in the State of New Jersey, as a result of his study of the child's physical condition. As to the merits of this inquiry we have no concern, except so far as it reveals the state of mind of the defendant. It is of importance in determining the questions involved in this proceeding to ascertain at what place and at what time the petitioner made the decision to retain the custody of the child.

The real question presented by this record is the determination as to whether, what the petitioner actually did, as shown on the face of the record and uncontradicted testimony, could have constituted the crime charged. In determining this the court will look beyond the mere sufficiency of the indictment as a criminal pleading. See *Hard* v. *Splain,* 45

*Dist. of Col. (Appeal Cases)* 1. In extradition, it must appear, as a condition precedent to the issuance of a warrant, that the person demanded is substantially charged with a crime against the laws of the state from whence he is alleged to have fled, and a crime which he could have committed on the date stated. This is a question of law always open to inquiry on a writ of *habeas corpus. Hyatt* v. *New York,* 188 *U. S.* 691; 47 *L. Ed.* 657. The gravamen of the crime in kidnapping is the carrying away of the person from his place of residence. See *John* v. *State,* 6 *Wyo.* (at *p.* 215). The crime is committed, if at all, as soon as the person is carried away from his place of residence, forcibly or fraudulently. The following note in 77 *A. L. R.* (at *p.* 322), is applicable to the situation at bar:

"Obviously, if the person, having legal custody consents to the taking, the crime of kidnapping is not committed, under a statute defining kidnapping as 'forcibly or fraudulently' carrying off or decoying a person from his place of residence. So, it was held in *John* v. *State* (1896), 6 *Wyo.* 203; 44 *Pac. Rep.* 51, that the defendant, who took his eleven-year-old daughter out of the state, with her consent and with the consent of her mother, to whom custody had been awarded in divorce proceedings, for the purpose of preventing the child's appearance as a witness in a criminal trial in which it had been subpœnaed, was not guilty of kidnapping."

It is manifest that the taking of the child, Rosanna, by petitioner was not a forcible or fraudulent taking, as it was done in conformity with the Illinois decree, and with the written consent of the mother, even though that consent may have been unnecessary.

Doubtless it is unnecessary to consider anything but what appears on the face of the record. However the uncontradicted testimony makes the case for petitioner much stronger. The act of removing the child from the State of Illinois was entirely lawful and proper and if, at the time of such removal, the petitioner did not entertain the intent to keep the child away from the State of Illinois, and did not reach that decision until after he had arrived in New Jersey, then the offense, if committed at all, must have been committed while

the defendant was in the State of New Jersey, which would, of necessity, result in a denial of the claim for extradition, and in the discharge of the petitioner. The conclusion is unescapable from a study of the record and the testimony presented that there was no intent on the part of the petitioner to keep the child away from the State of Illinois at any time while he was in that state, and this intention did not arise until he came to New Jersey and there learned that the child's physical condition was such that it would be unsafe for her to return to the custody of her mother, which decision was supplemented by an order of the New Jersey Court of Chancery made on or about November 17th, 1939, forbidding the removal of the child from the state, and committing it to the custody of the petitioner.

The extradition in the conspiracy case must likewise fail. The requisition is defective on its face. It is dated March 23d, 1940, and certifies the documents attached to be authentic. The petition, affidavit, indictment, &c., attached are dated May 13th, 1940, and May 14th, 1940. The Governor of Illinois could not have had them before him when he certified them to be authentic. The requisition is fatally defective, and the Governor's rendition made on these papers is without effect.

It must fail for another reason. Stripped of legal verbiage the indictment in this case charges petitioner with conspiracy to kidnap his child. It has been shown that it was legal for him to take the child on the date alleged. Therefore he could not be guilty of conspiracy to do a legal act.

The conspiracy case must fail for still another reason. There is not a statement of fact in the entire record to support the charge. Even the affidavit of Charles English has none; it is a mass of conclusions. The uncontradicted testimony of petitioner shows there was no conspiracy, that he did not see or have any relations with Charles English on July 8th, 1939, or at any time near that date.

In extradition proceedings the court will not pass on the weight of evidence. See In re Thompson, 85 N. J. Eq. 221. In the present case all testimony taken was uncontradicted. It established that the petitioner was not a fugitive from

justice, since no crime had been committed before or at the time he left Illinois. See *Strassheim* v. *Daily,* 221 *U. S.* 285; 55 *L. Ed.* 738. There was no evidence of intent on the part of the petitioner to keep the child permanently out of Illinois at the time he left that state. Constructive presence is not sufficient. The presence necessary to support extradition must be an actual presence at or about the time the crime charged is alleged to have been committed. There must be some reasonable basis for such a charge. Both proceedings arise out of the same transaction; the conspiracy indictment is an effort to accomplish what could not be done in the proceedings on the kidnapping indictment. The court in order to determine this should look beyond the mere sufficiency of the indictment as a criminal pleading. See *Hard* v. *Splain, supra.* The uncontradicted testimony shows that the petitioner was not a fugitive from justice.

Under the circumstances the petitioner should be discharged. Let orders be presented accordingly.