Hillsborough
No. 6947

STATE OF NEW HAMPSHIRE

v.

JOHN MUSUMECI

March 31, 1976

*Warren B. Rudman,* attorney general, and *Edward N. Damon,* attorney *(Mr. Damon* orally), for the State.

*William H. Kelley, R. John Roy,* and *John Czeciuk (Mr. Czeciuk* orally) for the defendant.

DUNCAN, J.   The defendant was indicted at the April 1970 term of the superior court on a charge that on March 22, 1970, at Nashua, he did abduct his three-year-old child, Lisa, with intent to conceal her from her legal custodian, Linda Musumeci. RSA 585:20, repealed, Laws 1973, 370:12. Linda was her mother, and the defendant's wife. Trial by jury resulted in a verdict of guilty. In the course of the trial, the defendant excepted to various rulings by the trial court, and certain instructions to the jury, and to the denial of his requests for instructions, as well as of his motion to set the verdict aside. The questions of law presented by these exceptions were reserved and transferred by the Presiding Justice, *Loughlin,* J.

At the time of the alleged offense, the complainant mother and the defendant were separated, and the defendant resided in Chelmsford, Massachusetts. On a libel brought by the mother, an order had been entered granting her temporary custody of the minor child, with rights of visitation in the defendant. On March 22, 1970, the defendant called at his wife's apartment in Nashua, where the child was turned over to him, together with a paper bag containing some of the child's clothing. The evidence was conflicting as to the understanding of the parties at this time. The mother testified that under the court order, the child was to be returned at 5 p.m. of the same day. The defendant's testimony was that by previous agreement with his wife, if he did not contest her libel for divorce, she would agree to a decree giving him custody of the child with rights of visitation in the mother; that on the day in question, the mother's father, with whom the defendant was not on good terms, was present at her apartment; and that when the child

was delivered to the defendant after some delay, the mother told him that her father "was in one of his violent tantrums", and that it would be best for him to take a holiday with the child for two weeks, so that she could "cool [her father] off and indicate to him what the agreement was between her and I . . . ." The defendant testified that he took the child to his apartment in Chelmsford, and then, because he feared that his father-in-law would find him through his employment "started west" with the child, finally coming to a stop in California.

In her testimony, the mother denied that there was such an arrangement, and testified that she told the defendant to return the child by 5:30 p.m.; and that when the child was not returned, she and a companion searched the city in an effort to locate the defendant's automobile and the child.

When the defendant learned in California that a complaint had been filed against him for kidnapping, he took employment there. He was ultimately located by authorities in Arizona, and the child was delivered to the mother and her second husband, in Arizona, in November 1971.

The major issue presented relates to the trial court's instructions to the jury. After advising the jury that they were the "sole judges of the facts in this case", and after reading the indictment, and charging that the mother had been awarded temporary custody of the child, the court instructed the jury that the defendant alleged an agreement with his wife "relative to his keeping the child for a longer period of time than set forth in the Court order", and that a court order "normally is binding until modified by a later court order . . . . This of course as I stated at the outset of my charge, is a question of fact for you gentlemen to decide". After a reading of the applicable provisions of RSA 585:20, and an instruction that the State must prove that the child was abducted with intent to keep her from the legal custodian, the charge continued by stating that the custody assigned to the mother "must be regarded, for all purposes, as lawful even as against the father". This was immediately followed by an instruction: "Of course, as I stated before, it is the allegation of the father that he had an oral agreement to have the child for a longer period of time than set forth in the agreement relative to visitation". The charge concluded with the statement: "Under our law a child of three years is incapable of consent to the seizure and removal. And that being taken, if you find it's lawful custody, it must be deemed to have been taken without her consent as a matter of law".

The defendant excepted to the instruction with respect to the alleged agreement "in that it leaves almost no way whatsoever for the jury . . . to use that as a defense to the charge of kidnapping on that day, under the instruction given". Counsel concluded: "I would take exception to the Court's failure to give some instruction that the legal guardian or . . . custodian can voluntarily give this custody to someone else and still take this case out of the realm of kidnapping, on a temporary basis".

The State argues that under the instructions given, "the jury was fairly left to consider the presence or absence of the wife's consent". It "concedes that the wife's consent . . . would tend to vitiate a finding of 'intent to keep or conceal him from the [child's] custodian'" within the meaning of the statute.

The jury could find upon the evidence that the wife consented to the taking of the child in New Hampshire, and that the defendant had formed no intent to conceal the child from the mother until he learned, in California, through contact with his place of employment, that "the police were looking for me for the charge of kidnapping". On such a finding, any offense must have occurred in California, rather than New Hampshire.

In the circumstances, it is plain that the instructions given, furnished the jury with no guidance as to the effect of a finding that the wife consented to the taking of the child in New Hampshire. Rather the instructions given, stating as they did that the mother's custody "must be regarded for all purposes as lawful even as against the father", and finally, with some ambiguity that "if you find it's lawful custody, it must be deemed to have been taken without her consent as a matter of law", were calculated to leave the jury with the impression that there was no choice except to find the defendant guilty.

We consider that under the applicable law, consent by the mother, if found to have been given, constituted a defense to the crime charged. *John v. State,* 6 Wyo. 203, 44 P. 51 (1896); *Ex parte Kelsey,* 19 N.J. Misc. 488, 21 A.2d 676 (1941); *see* R. Perkins, Criminal Law 182 (2d ed. 1969); 1 R. Anderson, Wharton's Criminal Law and Procedure, § 376, at 743 (1957) and Supp.; Annot., 77 A.L.R. 317, 322-23 (1932). *See also State v. Farrar,* 41 N.H. 53 (1860); *Adams v. State,* 218 Ga. 130, 126 S.E.2d 624 (1962). The defendant's exceptions with respect to the instructions to the jury are sustained, and there must be a new trial.

Certain evidence offered by the defendant, which was excluded subject to exception, may be offered upon retrial. The defendant

offered to prove that in September 1972, after the remarriage of the wife, she told the defendant that she would not testify against him in the criminal action, if he would consent to adoption of the child by her new husband. The evidence was offered for the "limited purpose of showing her motive ... a continuing motive on the part of Linda ... and her husband". If the evidence should again be offered against a background comparable to that at the last trial, we consider that it will be admissible as tending to cast doubt both upon the good faith of the charge made against the defendant, and upon the credibility of the mother's testimony that she did not consent to the defendant's retention of the child beyond 5:30 p.m. of March 22, 1970.

We do not consider RSA 585:20 to be unconstitutional because providing for cruel and unusual punishment, as applied to this case. The statute does not require a mandatory minimum sentence (*Cf. State v. Dean,* 115 N.H. 520, 345 A.2d 408 (1975)), and under the provisions of the Criminal Code (RSA 625:2 II; *State v. McMillan,* 115 N.H. 268, 339 A.2d 21 (1975)) the trial court's discretion in sentencing has been enlarged beyond what it was when the offense was charged.

*Defendant's exceptions sustained in part; new trial.*

All concurred.