Merrimack
No. 82-420

### BRIAN S. PLANTE

v.

### JOHN N. ENGEL & a.

December 7, 1983

214

*Perkins, Upshall & Robinson P.A.*, of Concord (*Kenneth L. Robinson, Jr.*, on the brief, and *Frederick E. Upshall* orally), for the plaintiff.

*Law Offices of James J. Barry, Jr., P.C.*, of Manchester (*James J. Barry, Jr.*, on the brief and orally), for the defendants.

BATCHELDER, J. The plaintiff appeals from an order of the Superior Court (*Wyman*, J.) granting the defendants' motion to dismiss. The trial court dismissed the plaintiff's writ "on the merits for failure to state a cause of action cognizable under the law of this jurisdiction." The issue is whether a declaration alleging the intentional aiding and abetting in the interference with parental custody is

actionable. We hold that such a cause of action is cognizable under the laws of New Hampshire and, therefore, reverse.

■ "In ruling on a motion to dismiss, all facts properly pleaded by the plaintiff are deemed true, and all reasonable inferences derived therefrom are construed most favorably to the plaintiff." *Weld Power Industries, Inc. v. C.S.I. Technologies, Inc.,* 124 N.H. 121, 123, 467 A.2d 568, 569 (1983).

In the declaration to his writ, the plaintiff alleges that he is the father of two minor children, and that he was awarded permanent custody of these children as part of a decree of the Merrimack County Superior Court divorcing himself and his former wife, Carolyn J. Plante, the children's mother. Following the divorce decree and contrary to its terms, the children's mother moved to Texas with the children without notifying the plaintiff. The defendants, John N. Engel and Elizabeth Engel, are the parents of Carolyn J. Plante and, therefore, the grandparents of the children.

The declaration continues by stating,

> "that the defendants were at all times under a duty not to interfere with plaintiff's parental rights or relationship with his children and not to assist Carolyn J. Plante or others in defying a valid and final order of the Merrimack County Superior Court; although having knowledge of said court order, but being wholly unmindful of these duties, the defendants did aid and abet the said Carolyn J. Plante in her efforts to absent herself from the State of New Hampshire with the minor children and move to another location in contravention of the final order of the Court with the intent to deprive the plaintiff of his rightful custody of his minor children. . . ."

The plaintiff alleges that, as a direct and proximate result of the willful and intentional breach of the defendants' duty not to interfere with the plaintiff's parental rights, he suffered various damages. He alleges that he incurred expenses in locating and regaining actual custody of the children; that he was deprived of the comfort, custody, and companionship of his children; that he suffered severe emotional distress; and that he suffered other substantial and consequential damages.

With these allegations, the plaintiff attempts to set out an action for the intentional interference with, and resulting harm to, that bundle of interests which attends a parent's custody of his or her child. *See generally* Note, *The Tort of Custodial Interference—Toward a More Complete Remedy to Parental Kidnapping,* 1983 U. ILL. L.

Rev. 229. The first question for the court is whether such an intentional tort is cognizable in New Hampshire jurisprudence. If such a tort does exist, the next question is whether a person who aids and abets one who commits this tort will also be liable for his or her actions.

■ The plaintiff argues that recognizing such an action for intentional interference with parental custody is a natural extension of our holding in *Sargent v. Mathewson*, 38 N.H. 54 (1859). In *Sargent*, a father brought an action against a man who had harbored his child and encouraged the child to remain away from him. We let stand a jury verdict for the plaintiff father for the loss of his son's services. In so ruling, we observed:

> "No question is made that the father, unless he has in some way forfeited or relinquished the right, is entitled to the services and custody of his minor child, and may recover damages against the party who deprives him of this right, by seducing away or harboring the child."

*Id.* at 57–58; *see also Beaudoin v. Beaudoin*, 118 N.H. 325, 386 A.2d 1261 (1978).

■■ This common-law action for loss of a child's services is distinguishable from an action for loss of custody. In the former action, compensation is sought for the actual pecuniary losses associated with the deprivation of the child's services, while in the latter, compensation is sought primarily for the emotional losses associated with being deprived of the child's care and comfort. An action for interference with custody resembles, in this respect, an action for loss of a spouse's consortium. *See* RSA 507:8-a; *Guevin v. Railway*, 78 N.H. 289, 99 A. 298 (1916). At common law, no such action for the loss of a child's care, comfort and companionship would lie. *E.g.*, *Baxter v. Superior Court of Los Angeles Cty.*, 19 Cal. 3d 461, 563 P.2d 871 (1977); *Gilbert v. Stanton Brewery Inc.*, 295 N.Y. 270, 67 N.E.2d 155 (1946); *see also* W. Prosser, Handbook of the Law of Torts § 125, at 888–90 (4th ed. 1971).

■■ The importance of the parent-child relationship is reflected in its treatment in New Hampshire law. *See, e.g., State v. Robert H. _____*, 118 N.H. 713, 715–16, 393 A.2d 1387, 1388–89 (1978) (holding that parental rights are "fundamental" and "natural, essential and inherent rights" under our State Constitution). The high place accorded filiation stems not from the material bond whereby services are provided to each other by parent and child, but from a recognition that there is a sanctity in the union of parent and child

that transcends economics and deserves the utmost respect. Because this relationship is so intimately connected with the parent's person, we hold that where there is an intentional interference with a parent's custody of his or her child, an injured parent is entitled to a remedy that completely compensates him or her. *See* N.H. CONST. pt. I, art. 14; *see also* RESTATEMENT (SECOND) OF TORTS § 700 (1976).

██ We see no reason to circumscribe this cause of action either by including only non-parents as defendants, or by excluding them. Accordingly, where a parent has been awarded custody of a child by court decree and the noncustodial parent abducts the child, an action will lie in favor of the custodial parent upon an allegation of damages. *See, e.g., Kajtazi v. Kajtazi,* 488 F. Supp. 15 (E.D.N.Y. 1978); *Spencer v. Terebelo,* 373 So. 2d 200 (La. Ct. App. 1979); *cf. State v. Musumeci,* 116 N.H. 136, 355 A.2d 434 (1967) (parent indicted for child abduction under former RSA 585:20); *State v. Farrar,* 41 N.H. 53 (1860) (parent indicted for kidnapping his child under predecessor statute to RSA 585:19).

 Likewise, we see no reason not to hold liable one who intentionally aids and abets another in interfering with the custodial rights of a parent. *See Lloyd v. Loeffler,* 694 F.2d 489 (7th Cir. 1982). This court has held that one may be found liable for damages on a conspiracy theory for combining with another to commit a civil wrong. *See Daniels v. Barker,* 89 N.H. 416, 421–22, 200 A. 410, 415–16 (1938). This rationale has been used by other courts to extend liability for custodial interference. *E.g., Fenslage v. Dawkins,* 629 F.2d 1107, 1110 (5th Cir. 1980); *Kipper v. Vokolek,* 546 S.W.2d 521, 525–26 (Mo. App. 1977).

 Certain elements of damages flow directly from an intentional interference with parental custody: recovery of expenses incurred in recovering the child, including legal fees; and compensation for the loss of the child's services and/or his care, comfort and companionship. The trier of fact may award damages for these elements where the plaintiff has sustained his burden of proving them. *See Grant v. Town of Newton,* 117 N.H. 159, 162, 370 A.2d 285, 287 (1977). In addition to the above, the plaintiff has put in a claim for damages for severe emotional distress. We are of the opinion that a claim for the intentional infliction of emotional distress should be treated as a separate cause of action. *See* RESTATEMENT (SECOND) OF TORTS § 46 (1965).

*Reversed and remanded.*

BROCK and SOUTER, JJ., did not sit; the others concurred.