Hillsborough,
No. 4799.

Floyd C. Durivage & a. App'ts v. Lorraine Vincent & a. App'ees.

Argued May 3, 1960.

Decided May 31, 1960.

*Jerome L. Silverstein* (by brief and orally), for the plaintiffs.

*Louis C. Wyman,* Attorney General and *William J. O'Neil,* Assistant Attorney General (*Mr. O'Neil* orally), for the Department of Public Welfare.

DUNCAN, J. Adoption was unknown at common law and is wholly statutory. RSA ch. 461; *Morse* v. *Osborne,* 75 N. H. 487. "As adoption is in derogation of the common law right of the parent, consent of the natural parents is generally required and is a most important item of adoption proceedings." *Blue* v. *Boisvert,* 143 Me. 173, 179. In its earlier form the statute of this jurisdiction providing for adoption required that the natural parents should consent thereto, or in the event of the death of either that the survivor should do so. Laws 1862, *c.* 2603, *s.* 2. The authority of the probate court to enter a decree was made dependent upon such consent (*Id., s.* 3), and it could be dispensed with only in the case of death of both parents, in which case the consent of a guardian or of next of kin, or of a guardian *ad litem* was required. *S.* 2, *supra.* Since adoption operated to deprive the natural parents of their parental rights (*s.* 5) their consent was thus made a prime requisite.

The concept that parental consent is necessary to valid adoption

has remained a part of the statute to the present day, although various provisions have been enacted from time to time dispensing with the need for consent of one of the parents in specified circumstances. RSA 461:3; *Lucius* v. *Wistner*, 97 N. H. 128. Thus in the revision of the statutes of 1867 it was provided that in the case of an illegitimate child the consent of the mother should be considered "sufficient." G. S., *c.* 169, *s.* 2. In 1873 it was further provided that in case of abandonment on the part of either parent, the consent of the other should be sufficient (Laws 1873, *c.* 4, *s.* 1); and a like provision was made in 1889 against the contingency of insanity on the part of either parent. Laws 1889, *c.* 42, *s.* 1. In no instance however has the Legislature provided that the consent of both parents could be dispensed with, except when both were deceased, unless the child is a public charge (RSA 167:44, 49, 57) or a guardian has been appointed under RSA 463:6. See RSA 463:10. The authority which RSA 461:3, *supra,* confers upon a guardian, or if there is no guardian, upon a guardian *ad litem,* is now and in the past has been limited to the case where "neither parent is living." RSA 461:3, *supra.* See R. L., *c.* 345, *s.* 2.

The petition for adoption filed by the plaintiffs in the pending appeal met the statutory requirements since it was a "case of an illegitimate child" and the petition bore the consent of the mother of the child. This was sufficient to confer jurisdiction of the subject matter upon the probate court, with the power to enter a decree of adoption if the necessary supporting findings were warranted. RSA 461:5; *Wilson* v. *Otis,* 71 N. H. 483, 487. See *In re Adoption of a Minor,* (Mass.) 156 N. E. (2d) 801.

When the appeals came on for trial in the Superior Court, the mother undertook to withdraw her consent. The plaintiffs contend that the findings by the Superior Court that the mother had abandoned the child dispensed with the necessity for her consent. The finding with respect to abandonment was excepted to by the Department of Public Welfare, but we think it unnecessary to pass upon the exception. The plaintiffs' position is not improved if the mother's consent can be dispensed with by reason of abandonment, because the applicable statute makes no provision for adoption in a case where living parents have both abandoned the child. *Cf. Blue* v. *Boisvert,* 143 Me. *supra,* 178, 180. RSA 461:3 as hereinbefore indicated, authorizes a guardian or guardian *ad litem* to consent only when "neither parent is living." RSA 461:3, *supra.* Since the Commissioner of Public Welfare was appointed guardian

upon the plaintiffs' petition for custody, and not upon petition under RSA 463:6, the provisions of RSA 463:10 do not apply in these proceedings. Nor do we consider that RSA 167:57 can apply in view of the provisions of RSA 167:44, and 49. Hence, unless the mother consents to adoption, no decree of adoption is permitted in this case by the statutes in their existing form.

The mother in fact gave her consent, and having been given, it was not invalidated because of the finding of abandonment. In accordance with the literal provisions of RSA 461:3, her consent was "sufficient" to permit the court "to act judicially" (*Wilson* v. *Otis, supra,* 487), unless her subsequent undertaking to withdraw it on October 23, 1958, operated to terminate the authority of the Court as a matter of law.

The Trial Court found that the mother's withdrawal of consent, and her refusal to consent at that time, "were voluntary." That finding however does not dispose of the matter. The statute makes no provision for withdrawal of consent once the jurisdiction of the probate court has attached. By a growing weight of authority the right to withdraw consent to adoption is considered not to be absolute but to be governed by equitable considerations. 1 Am. Jur., Adoption of Children, s. 37.1 (supp.). Thus in *Wyness* v. *Crowley,* 292 Mass. 461, 464, it was said: "To accede to the contention that such voluntary consent may be withdrawn would be equivalent to saying that parties may come to a court, deliberately give their assent . . . in matters affecting their interests, and afterwards, at their will and pleasure, return to the court and undo what they did because on a future day they did not like it." Hence, following the English practice the court in that case held that consent given by the mother might not be arbitrarily withdrawn before a decree on a petition for adoption "unless some error is shewn which satisfies the Court that the consenting party ought not to be bound." See *Perley* v. *Bailey,* 89 N. H. 359, 360.

The view of the Massachusetts court finds substantial support in other jurisdictions and appears to us to furnish a satisfactory rule for the disposition of the issue presented. *Bailey* v. *Mars,* 138 Conn. 593; *Browning* v. *Humphrey,* 241 N. C. 285; *In re Holman's Adoption,* 80 Ariz. 201. See also, anno. 156 A.L.R. 1011; *In re Adoption of Morrison,* 260 Wis. 50; *Matter of Maxwell,* 4 N. Y. (2d) 429.

We conclude that the mother's withdrawal of consent did not operate automatically to terminate the proceedings previously

consented to, and that it was error to dismiss the plaintiffs' appeal as a matter of law on account thereof. It was for the Trial Court in the exercise of its discretion (*Perley* v. *Bailey, supra*) to determine whether justice required that withdrawal of consent should be permitted after the minor child had remained in the custody of the plaintiffs for more than two years following the mother's consent to adoption, and after the petition bearing that consent has been acted upon by the probate court. In such circumstances withdrawal of consent should not be permitted unless to deny withdrawal would work injustice. *Ellis* v. *McCoy,* 332 Mass. 254, 258. See *Saykaly* v. *Manchester,* 97 N. H. 4.

Since the appeal was dismissed as a matter of law "because of the withdrawal of consent by the mother," and not in the Court's discretion, the plaintiffs' exception to the order dismissing their appeal is sustained. If upon rehearing the Court determines that sufficient reason exists to warrant permission to withdraw consent, and grants such permission, the plaintiffs' appeal may properly be dismissed. If such permission is denied, it will be in order to determine whether it is for the welfare of the child that the petition for adoption be granted; and in making this determination the consent of the mother will be in no way binding on the trier of the facts. *Erickson* v. *Raspperry,* 320 Mass. 333, 335.

The plaintiffs' appeal from the order of the probate court dismissing their petition for legal custody of the minor child was dismissed by the Superior Court because they "are not persons who were legally 'aggrieved' by the probate court decree, and hence are not entitled to appeal therefrom. RSA 567:1 Hutchins v. Brown, 77 N. H. 105."

In *Hutchins* v. *Brown, supra,* it was held that an appeal by a blood relative of a minor child from a decree appointing a guardian could not be maintained "as the decree does not relate to any property interest of the appellant in a personal or representative capacity, and as he has not alleged any facts establishing a legal right to the appointment . . . his interest in the decree . . . not being of a pecuniary nature or resting upon a personal right, he is not a person legally aggrieved." *Id.,* 107, 108. See also, *Leonard* v. *Fahey,* 87 N. H. 170, 172.

These plaintiffs, while unrelated to the minor, have in fact stood *in loco parentis* almost from his birth. We are of the opinion that the existence of this relationship gave rise to personal rights which entitled them to appeal from the dismissal of their petition.

In *Whitaker* v. *Warren*, 60 N. H. 20, the plaintiff was permitted to maintain an action for damages for personal injury suffered by a minor child who had lived most of his life in the plaintiff's family as his child. The court there said "the facts stated are evidence tending to show that the plaintiff stood *in loco parentis* to the child, and while this relation existed, the plaintiff was entitled to all the rights of a parent." *Id.*, 26. The plaintiffs in the case before us are similarly entitled to exercise the rights of parents until such time as legal custody of the minor child may be finally granted to someone else. They are accordingly entitled to maintain their appeal, and their exception to the order dismissing it is likewise sustained.

*Appellants' exceptions sustained; remanded.*

All concurred.