Rockingham
No. 80-353

## MAURICE M. MURPHY

v.

## DAVID H. BATEMAN & a.

August 10, 1981

*Eldredge & Eldredge*, of Portsmouth (*Charles M. Eldredge* on the brief), by brief for the plaintiff.

*Taylor, Gray & Keane P.A.*, of Portsmouth (*Douglas R. Gray* on the brief), by brief for the defendant.

*Kalil & Reams*, of Northwood, waived brief for the intervenor Kenick & Tomilson, Inc.

PER CURIAM. The plaintiff appeals the trial court's finding that the defendants had made no misrepresentation to the plaintiff and the court's consequent refusal to grant rescission of the plaintiff's written agreement to indemnify the defendants against a third party's claim for money due on a construction contract. We affirm.

In the fall of 1977, the plaintiff and the defendants became joint-venturers in a project to relocate, renovate, and sell a house. They hired Kenick & Tomilson, Inc. (Kenick), the intervenor in this appeal, to do the restoration work and entered into a written contract with Kenick. On May 9, 1978, the defendants, David H. Bateman and Henry A. Keating, and the contractor, Kenick, signed a "change order" amending the contract. In that document Bateman and Keating agreed ". . . to pay balance of $6,000 to contractor immediately upon completing sale of property and to furnish promissory note to contractor so stipulating within five days from the execution hereof."

The parties had difficulty selling the house. There was a dispute over the $6,000 owed to Kenick, so before the house could be sold the plaintiff agreed to sign an indemnity agreement drawn up by the defendants' lawyer. That agreement provided:

"FOR VALUE RECEIVED, I Maurice M. Murphy, of Greenland, New Hampshire, hereby agree that I will indemnify David Batemen [sic], James H. Somes, Jr. and Henry Keating from all actions, proceedings, claims or demands by Kenick & Tomilson of Exeter, New Hampshire, which have arisen or may arise out of a *disputed statement of account* rendered by the said Kenick & Tomilson to me, or the said David Bateman, James H. Somes, Jr. and Henry Keating, concerning certain property know [sic] as Lot #10 in the Bayridge Development in Greenland, New Hampshire.

It is further agreed that I will defend any action brought by Kenick & Tomilson and pay any judgment rendered therein, or if any such judgment is rendered against the said David Batemen [sic], James H. Somes, Jr. or Henry Keating concerning the same, I will forthwith reimburse any or all of the aforenamed for any part or all of such payment made by them. . . . "

(Emphasis added.)

On November 2, 1979, Kenick brought suit against the defendants, who later named the plaintiff as a third-party defendant based upon the indemnity agreement. The plaintiff filed a bill in equity to rescind the agreement and a petition for declaratory

judgment, claiming that the defendants had misrepresented to him the status of Kenick's claim. Specifically, the plaintiff alleged that the defendants concealed from him, until after he had signed the indemnity agreement, the fact that they had promised to pay Kenick $6,000.

After a hearing held on June 18, 1980, the Master (*Dale T. Swanson*, Esq.) found that the defendants had made no misrepresentations which induced the plaintiff to sign the indemnity agreement. He recommended that the plaintiff's petitions for rescission and for declaratory judgment be denied. *Wyman*, J. approved the master's recommendation and entered a decree in accordance with it. The plaintiff appeals.

■ The controversy in this case centers on the "change order." The plaintiff alleges that the defendants did not tell him that they had signed that document before he signed the indemnity agreement. The plaintiff argues that concealment of that information amounted to a misrepresentation that the debt was "disputed." The master, however, found that the defendants had made no misrepresentations to the plaintiff before he signed the indemnity agreement. We will not disturb a master's findings unless they are unsupported by the evidence or erroneous as a matter of law. *Summit Electric, Inc. v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981); *Hynes v. Whitehouse*, 120 N.H. 417, 421, 415 A.2d 876, 878 (1980).

■ Although the defendants testified that they did not give the plaintiff a copy of the "change order" before he signed the indemnity agreement, they stated that they had discussed the agreement with the plaintiff and that he knew of it. The plaintiff testified that he was unaware of that agreement until after he had signed the indemnity document. Conflicting testimony is for the master to resolve. *Town of Croydon v. Current Use Advisory Board*, 121 N.H. 442, 446, 431 A.2d 126, 129 (1981); *Goodwin v. Johnson*, 105 N.H. 294, 296, 199 A.2d 97, 99 (1964). The master's finding that the defendants made no misrepresentations to the plaintiff is supported by the defendants' testimony. That finding is further supported by the plaintiff's own testimony that he was aware at the time he signed the agreement that he and his partners owed Kenick $6,000.

■ It appears, however, that the plaintiff's concern is not with the existence of the debt but with the nature of the "change order." He interprets that document to be a promissory note, which he concludes cannot be disputed. Hence, he argues that the defend-

ants misled him by characterizing the debt as "disputed" in the indemnity agreement. The defendants, however, construe the "change order" as an amendment changing the contract from a cost-plus contract to a fixed price contract. Even if we were to agree with the plaintiff that the "change order" is actually a promissory note, we would not agree that the debt cannot be disputed on the basis of Kenick's failure to perform adequately its contract. *See* RSA 382-A:3-306; *K-Ross Building Supply Ctr., Inc. v. Winnipesaukee Chalets, Inc.*, 121 N.H. 575, 580, 432 A.2d 8, 12 (1981).

The defendants testified that they had informed the plaintiff that they thought Kenick's claim could be disputed on the basis of untimely and defective performance of the contract but that *they* did not intend to dispute it. Moreover, the defendants testified that they would be willing to serve as witnesses if the plaintiff chose to dispute the claim. That evidence supports the master's finding that the defendants did not misrepresent to the plaintiff that the Kenick claim was "disputed."

*Affirmed.*

BATCHELDER, J., did not sit.