Merrimack
No. 81-286

JAMES D. GLEASON

v.

ELBTHAL REALTY TRUST & a.

May 12, 1982

412

*Leahy, Denault & Moody*, of Claremont (*Richard S. Moody* on the brief and orally), for the plaintiff.

*Robert H. Rowe*, of Milford, by brief and orally, for the defendants.

KING, C.J.    The plaintiff, James D. Gleason, brought a bill in equity to set aside a conveyance of real estate, consisting of 178 acres in Henniker, New Hampshire, known as the Colburn Lot, from the defendants, the Elbthal Realty Trust and Arthur R. Elb-

thal, Lawrence J. Elbthal and Louisa C. Elbthal, to Daryl McQuirk, claiming that the defendants had an obligation to convey the Colburn Lot to the plaintiff under a written contract dated September 5, 1979. The Master (*Robert C. Varney*, Esq.) recommended that the conveyance be set aside and further recommended that the plaintiff be given a choice of equitable relief or monetary damages. The Superior Court (*Contas*, J.) approved the master's recommendations, and the defendants appealed. We affirm.

The Colburn Lot was owned by the Elbthal Realty Trust. The trust is managed by three trustees, Arthur R. Elbthal, Louisa C. Elbthal, and Lawrence J. Elbthal, all of Ayer, Massachusetts. Under the terms of the trust agreement, all agreements for the sale of land must be performed by at least two of the trustees.

In June 1979, Arthur R. Elbthal and Lawrence J. Elbthal listed the Colburn Lot for sale with Weare Realty in Weare, New Hampshire, at an asking price of $151,215. Weare Realty showed the property to the plaintiff, who made an offer to purchase for $45,000. Weare Realty informed Arthur R. Elbthal of this offer, and thereafter, Arthur R. Elbthal commenced direct negotiations with the plaintiff. After numerous telephone negotiations, the plaintiff raised his offer to $47,000.

At the request of Arthur R. Elbthal, he and the plaintiff met on September 5, 1979, and signed a purchase-and-sale agreement which had been drawn up by Arthur R. Elbthal. The purchase-and-sale agreement stated a purchase price of $50,000 which was to be paid in installments; $30,000 on or before September 11, 1979, and the balance of $20,000 within three weeks of September 5, 1979. The agreement also stated that it was conditioned on the approval of the mortgagee.

On September 6, 1979, Arthur R. Elbthal advised Lawrence J. Elbthal of the agreement, and at about the same time, he contacted the mortgagee, the Firestone Financial Corporation, to secure a partial release of the mortgage. On September 10, 1979, the plaintiff recorded the purchase-and-sale agreement in the Merrimack County Registry of Deeds. Meanwhile, on September 10, 1979, the trustees executed a purchase-and-sale agreement to sell the Colburn Lot to the defendant Daryl McQuirk for $67,000.

On September 11, 1979, at the time scheduled for a meeting with Arthur R. Elbthal, the plaintiff met with the representative of Weare Realty and gave him the $30,000 initial payment. Arthur R. Elbthal did not appear for the meeting. On September 12, 1979, the Elbthal Realty Trust conveyed the Colburn Lot to McQuirk.

The defendants argue that Arthur R. Elbthal alone had no

authority to bind the trust and that there was no evidence presented that Lawrence J. Elbthal had acted in conjunction with Arthur R. Elbthal. The master, however, found that the Elbthal brothers, as co-trustees, acted in concert when agreeing to sell the lot to the plaintiff, and that only after the better offer was received from McQuirk were "skillful, secret and swift steps taken [by them] to avoid the agreement" with the plaintiff.

■■ The execution of a purchase-and-sale agreement by one trustee, when ratified or acquiesced in by a sufficient number of co-trustees under the terms of the trust, binds the trust. *See* 3 A. SCOTT, THE LAW OF TRUSTS § 194, at 1607–08 (3d ed. 1967); *cf.* G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 554, at 96 (2d ed. 1980) (absent ratification, trust not bound by unauthorized acts of trustee). The master had sufficient evidence before him to conclude that two trustees had acquiesced in the sale to the plaintiff.

■■ The defendants rely on this court's decision in *Wilson v. Atwood*, 81 N.H. 61, 63, 122 A. 797, 798–99 (1923), to support their position that there must be an *external* demonstration on the part of a principal showing an intent to ratify an unauthorized act of an agent. By finding that Lawrence J. Elbthal acted in concert with Arthur R. Elbthal, the master implicitly found that Lawrence J. Elbthal evidenced his ratification by some external demonstration of approval to Arthur R. Elbthal. *See generally* 2 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 278, at 253–73 (3d ed. 1959). The close relationship of the Elbthal brothers supports this finding. Furthermore, Lawrence J. Elbthal testified that he had spoken to the plaintiff several times during negotiations, and yet he never notified the plaintiff that he did not accept the purchase-and-sale agreement as binding. The trust instrument itself supports the plaintiff's reliance on the authority of Arthur R. Elbthal in stating that "[n]o purchaser . . . shall be . . . required to inquire with respect to the authority of the Trustees to execute any deed, . . . or other conveyance of said trust property, or any part thereof." Because the trier of fact is in the best position to evaluate the evidence, measure its persuasiveness and appraise the credibility of witnesses, *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 350, 415 A.2d 671, 674 (1980), and because the master's finding is supported by the evidence, we will not overturn the trial court's decision. *See Murphy v. Bateman*, 121 N.H. 748, 750, 433 A.2d 1330, 1331 (1981).

■■ The defendants also rely on RSA ch. 564-A, the Uniform Trustees' Powers Act, to support their appeal. This statute applies

only to trusts established after August 29, 1969, or to trust assets acquired after that date. RSA 564-A:8; Laws 1969, 312:3 (eff. August 29, 1969). The Elbthal Realty Trust, however, was established before 1969, on June 1, 1968, and the Colburn Lot was conveyed to the trust during the same year. Even if the statute were applicable, the plaintiff would have been fully protected in dealing with Arthur R. Elbthal because the statute expressly provides that third persons dealing with a trustee are " . . . fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise." RSA 564-A:7.

■■ The defendants next argue that the pleadings did not specifically refer to ratification of the purchase-and-sale agreement by a second trustee and were, therefore, insufficient as a matter of law to justify the trial court's decree. The plaintiff alleged in his pleadings, however, that the purchase-and-sale agreement was a binding and valid contract. This allegation sufficiently stated a cause of action and put the defendants on notice of the plaintiff's claim. If the pleadings contain allegations which permit counsel to understand the dispute and the court to decide the controversy on its merits, the pleadings meet the test of adequacy. *See Morgenroth Assoc's., Inc. v. Town of Tilton*, 121 N.H. 511, 516, 431 A.2d 770, 773 (1981); *Berlinguette v. Stanton*, 120 N.H. 760, 762, 423 A.2d 289, 290 (1980).

■ The defendants' final argument is that the condition of mortgagee approval contained in the purchase-and-sale agreement was not met. Arthur R. Elbthal testified, however, that the mortgagee had no financial interest in the Elbthal Realty Trust and did not care to whom the property was sold as long as it received $50,000 for the partial discharge. After hearing all the testimony, the master found that the condition had been satisfied, and there is sufficient evidence to support his finding, including Arthur R. Elbthal's testimony that the mortgagee actually executed a release on September 10, 1979.

*Affirmed.*

DOUGLAS, J., did not sit; the others concurred.