Hillsborough County Probate Court
No. 83-404

## *In re* ADOPTION OF BABY C.

July 23, 1984

*Joseph C. Krolikowski P.A.*, of Nashua (*Mr. Krolikowski* on the brief and orally), for the natural parents.

*Kozlowski, Gauthier & Parodi*, of Nashua (*Robert M. Parodi* on the brief and orally), for the adoptive parents.

DOUGLAS, J.    This case involves the right of natural parents to withdraw their consent to adoption prior to the entry of an interlocutory decree. The case was heard by a Master (*Harry C. Lichman*, Esq.), who found that the withdrawal of consent to adoption was not in the child's best interest. The master's finding was approved by the Hillsborough County Probate Court (*Spanos*, J.), and the natural parents' petition to withdraw consent to adoption was denied. We affirm.

The natural mother conceived a child at age seventeen and was indecisive as to whether she should raise the child or allow it to be adopted. The natural mother obtained counseling and decided to have the child adopted. The adoptive parents' attorney was contacted, and he arranged for the child to be delivered to the adoptive parents following birth.

On March 2, 1983, the child was born, and the natural parents subsequently changed their minds and decided that they wished to keep the child. The natural parents brought the child home from the hospital and retained it for twenty days. During that time, the natural parents experienced doubts regarding their ability to care properly for the child. This precipitated arguments by the couple, and ultimately depression on the part of the natural mother.

The natural father then contacted the adoptive parents' attorney to reinstitute adoption proceedings. On April 5, 1983, the natural parents went to the office of the attorney for the adoptive parents, who accompanied them to the Hillsborough County Probate Court. In the presence of the Probate Judge (*Cloutier*, J.), the parents executed a consent to adoption, RSA 170-B:9, II, and the child was then delivered to the adoptive parents. There is no allegation that the adoptive parents did not comply with all applicable statutes and regulations concerning adoption and the preplacement investigations. *See* RSA ch. 170-B. In addition, there is no allegation that the consent was obtained by fraud or duress, or that it was not voluntary.

The natural parents again changed their minds and decided that they wanted the child back, and on April 8, 1983, they filed a request to withdraw their consent to adoption. RSA 170-B:10. The petition was heard by a master, who found that the natural parents had not met their burden of proving that the withdrawal of the consent to adoption was in the "best interests" of the child. RSA 170-B:10. The master's finding was approved by the probate court, the petition was denied, and this appeal ensued.

■ "Recently, this court reaffirmed its position that parental rights are fundamental rights under the New Hampshire Constitution . . . . In doing so, the court recognized that there is a 'sanctity in the union of a parent and child that transcends economics and deserves the utmost respect.'" *Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719, 475 A.2d 19 (1984) (Douglas, J., dissenting) (quoting *Plante v. Engel*, 124 N.H. 213, 216–17, 469 A.2d 1299, 1301 (1983)); *see In re Jessica B.*, 121 N.H. 291, 429 A.2d 320 (1981).

■ We remain committed to the preservation of the integrity of the family, as it is the very foundation of our society. *See State v. Robert H.* _____, 118 N.H. 713, 716, 393 A.2d 1387, 1389 (1978) (under New Hampshire Constitution, State must prove its case beyond a reasonable doubt to terminate parental rights); *see also* C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE: FAMILY LAW 442 (1982) ("Since *Robert H.* was decided in 1978, no justice, despite changes in

the Court, has dissented from the high standard of proof."); *see generally In re Jessica W.*, 122 N.H. 1052, 453 A.2d 1297 (1982). This case, however, does not present an issue involving the infringement of the rights of the natural parents because, as more fully discussed below, their rights are adequately protected by statute and prior decisions of this court.

The natural parents argue that, at the hearing to determine whether they may withdraw their consent to adoption, the master is obligated to balance the rights of the three parties—the child, the natural parents, and the adoptive parents. The natural parents contend that the master's failure to hold a hearing at which the natural parents could cross-examine the adoptive parents, and his failure to rule properly on other issues, constitute reversible error.

■ Prior to the enactment of the present statutory scheme, we held that the right to withdraw consent to adoption was not "absolute but . . . governed by equitable considerations." *Durivage v. Vincent*, 102 N.H. 481, 485, 161 A.2d 175, 178 (1960). In so holding, we recognized that: "'To accede to the contention that such voluntary consent may be withdrawn would be equivalent to saying that parties may come to a court, deliberately give their assent . . . and afterwards, at their will and pleasure, return to the court and undo what they did because on a future day they did not like it.'" *Id.* (quoting *Wyness v. Crowley*, 292 Mass. 461, 464, 198 N.E. 758, 759 (1935)).

■■ In 1973, the legislature enacted RSA chapter 170-B "the product of a 1972 gubernatorial commission." C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE: FAMILY LAW 396–97 (1982). The stated purpose of this comprehensive statutory scheme was to: protect the child from unnecessary separations; protect the natural parents from hurried and coerced decisions; and protect the adoptive parents from disturbances after adoption. RSA 170-B:1. "In balancing the equities between the parties, the commission incorporated procedures into the law that would hopefully insure that the consent to adoption was knowing and voluntary. Having done that, the commission then limited the natural parents['] rights to withdraw that consent." Bianco, Chamberlain & DeGrandpre, *The New Hampshire Adoption Statute: An Overview*, 18 N.H.B.J. 199, 204–05 (1977).

■ The rights of the natural parents are recognized and provided for throughout the adoption statute. RSA 170-B:5 sets forth the requirement that the consent of the natural parents is needed prior to adoption. RSA 170-B:7 precludes consent to adoption within

seventy-two hours of the birth of the child. RSA 170-B:9, II provides that the consent to adoption must be executed in the presence of the court. RSA 170-B:10 mandates that natural parents seeking to withdraw their consent to adoption, prior to the entry of an interlocutory decree, be afforded notice and the opportunity to be heard. In addition, the natural parents may withdraw their consent to adoption after the entry of the interlocutory decree if it has been obtained by fraud or duress. *Id.* We hold that these statutory procedures adequately protect the rights of natural parents.

The inherent flaw throughout the arguments proffered by the natural parents is their interpretation of the scope of the hearing to determine whether they should be allowed to withdraw their consent to adoption. RSA 170-B:10 provides that: "A consent to adoption may not be withdrawn prior to the entry of an interlocutory decree of adoption unless the court finds, after notice and opportunity to be heard is afforded separately to the petitioner, the person seeking the withdrawal, and the agency placing a minor for adoption . . . that the withdrawal is in the *best interest* of the person to be adopted and the court orders the withdrawal." (Emphasis added.) The natural parents erroneously contend that at this hearing the master should have balanced their rights, those of the adoptive parents, and those of the child to determine the best interest of the child. A best interest test, however, is simply not a balancing test of the rights of the three parties.

On a more fundamental level, the natural parents have misconstrued the basic purpose of the hearing to determine whether they should be allowed to withdraw their consent to adoption. The purpose of the hearing mandated by RSA 170-B:10 is to determine whether *withdrawal* of consent is in the best interest of the child, not whether adoption is in the best interest of the child. Whether the adoption of the child is in the child's best interest is the subject of a completely separate hearing conducted after an investigation of the adoptive parents. *See* RSA 170-B:14, :15. Accordingly, we now turn to the proper scope of a hearing under RSA 170-B:10.

In view of the fact that an investigation and evaluation of the adoptive parents is conducted before a petition for adoption is heard, and the court must find, at a separate hearing, that the adoption is in the best interest of the child, RSA 170-B:15, a court in considering a petition to withdraw consent to adoption may presume that the adoptive parents will be fit parents. The proper focus of the hearing on the petition to withdraw consent to adoption, therefore, is necessarily on the natural parents and the child. In making the dif-

ficult determination whether the withdrawal of the consent to adoption is in the child's best interest, a court should consider every facet of the natural parents' lives, including: their marital status; their age and experience; their history of substance use and abuse; their criminal records; their psychiatric state and backgrounds; their vacillation in deciding whether to keep the child; the importance of the biological ties; and the length of time between the consent and the withdrawal of the consent. *Cf. Sheehy v. Sheehy*, 88 N.H. 223, 228, 186 A. 1, 5 (1936).

The court must also consider the effect the withdrawal of consent would have on the child, including: the trauma the child may experience by the repeated moves, i.e., separation anxiety; the age and expressed wishes of the child; and interference with the bonding that has occurred between the child and the natural or adoptive parents. *See* C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE: FAMILY LAW 229 (1982) ("Rejection of an infant by his parents in the early weeks has severely negative implications for the future success of the parent-child relationship.").

The trier of fact must then evaluate the *entire* situation and decide whether the withdrawal of consent is in the best interest of the child. Concededly, this is a very difficult task, in which no single factor should be an overriding consideration.

When the legislature enacted RSA 170-B:10, it must have considered the vacillation of the parents, in deciding to make the withdrawal of consent to adoption a difficult procedure. *See* Bianco, Chamberlain & DeGrandpre, *The New Hampshire Adoption Statute: An Overview*, 18 N.H.B.J. 199, 204–05 (1977). On the other hand, the importance of the biological ties of parents to their children have been recognized as being of constitutional dimension. *See Plante v. Engel*, 124 N.H. 213, 469 A.2d 1299 (1983). Although we do not rule that these two factors are of equal significance, for reasons set forth below, we rule that the natural parents have the burden of proof at the hearing. The natural parents must prove by a preponderance of the evidence that the withdrawal of their consent is in the child's best interest. In order to prevail, the natural parents must show, at the minimum, that any vacillation over parenthood is resolved, and that they are fit parents.

The natural parents argue that the master erred in failing to hold a hearing at which the adoptive parents could be cross-examined. This argument is without merit because, as we have stated, the natural parents and the child are the focus of the hearing to determine whether the *withdrawal* is in the child's best interest.

RSA 170-B:10 provides the adoptive parents with the right to notice, and the "opportunity to be heard" at a hearing on this question. The statutory language, the "opportunity to be heard," clearly makes the adoptive parents the holder of this right to be heard. The adoptive parents' right to be heard under RSA 170-B:10, however, does not require that they be present at the hearing, nor does it confer on the natural parents the right to cross-examine the adoptive parents.

RSA 170-B:10, and numerous other courts, hold that the natural parents may withdraw consent to adoption if there has been fraud or duress. *See, e.g., Duncan v. Harden*, 234 Ga. 204, 214 S.E.2d 890 (1975); *Stotler v. Lutheran Social Service*, 209 N.W.2d 121 (Iowa 1977); *Susko Adoption Case*, 363 Pa. 78, 69 A.2d 132 (1949). In such cases the adoptive parents may wish to exercise their right to be heard, RSA 170-B:10. However, there has been no allegation of fraud or duress in this case, and we find no error in the master's decision not to require a hearing involving the adoptive parents in this proceeding.

The natural parents argue that the master erred in considering their marital status to determine whether they should be allowed to withdraw their consent to adoption. This argument is without merit because, as we have stated previously, the court may properly consider every aspect of the natural parents' lives in making its determination. Although the parents' marital status could never be dispositive of the issue, the parents' marital status may be indicative of the quality and stability of the family relationship and, therefore, must be considered.

The natural parents argue that the master erred in ruling that they had the burden of proof. RSA 170-B:10 provides that: "A consent to adoption may not be withdrawn . . . unless the court finds . . . that the withdrawal is in the [child's] best interest . . . ." Although the statute does not explicitly place the burden of proof on the natural parents, they are the moving party and, as in all other matters, have the burden of persuasion cast upon them. Absent this burden, petitioners would not have to come forward and establish at least a prima facie case, and, theoretically, no one would prevail in the case where all factors were even. *Cf. In re Revocation of Appointment of Guardian of a Minor*, 360 Mass. 81, 271 N.E.2d 621 (1971); *Stotler v. Lutheran Social Service*, 209 N.W.2d 121 (Iowa 1977).

Accordingly, we find no error in the master's ruling that the natural parents did not meet their burden of proving that the

withdrawal of consent to adoption was in the best interest of the child.

The natural parents argue that the master's finding is against the weight of the evidence and that he failed to consider their biological ties to the child. These arguments are also without merit because there was no evidence to show that the master failed to consider the biological ties, and there was sufficient evidence to support his decision.

A master's findings will be upheld unless they are unsupported by the evidence or erroneous as a matter of law. *Murphy v. Bateman*, 121 N.H. 748, 750, 433 A.2d 1330, 1331 (1980); *see Suojanen v. Tardif*, 121 N.H. 1036, 1038, 437 A.2d 310, 311 (1981); *see also Dobson v. Staples*, 123 N.H. 102, 103, 456 A.2d 972, 972 (1983); *Campo v. Maloney*, 122 N.H. 162, 168, 442 A.2d 997, 1001 (1982). The reason for this rule is that the master is in the best position to observe the parties, evaluate the evidence, and assign credibility to the testimony. *See Gleason v. Elbthal Realty Trust*, 122 N.H. 411, 414, 445 A.2d 1104, 1105–06 (1982).

The master heard evidence that the natural parents: vacillated about the child; were totally unprepared for child-rearing; and were unmarried at the time of conception, and delivery, and at the date of the hearing. The master also heard evidence that the mother was seventeen years old at the time of conception and the father approximately thirty years old; that the father has a criminal record and served a year in the State prison; and that during the time they had the child at home the parents never brought it to a physician to be examined.

Based on this evidence we cannot, as a matter of law, rule that the master's decision was unsupported by the evidence. *Murphy v. Bateman supra; see Adoption of Duarte*, 229 Cal. App. 2d 775, 780, 40 Cal. Rptr. 671, 675 (1964) (withdrawal of consent to adoption not in best interest of child; mother fourteen years old, father twenty-eight years old with criminal record); *J.M.A.L. v. Lutheran Social Services*, 418 A.2d 133 (D.C. App. 1980) (withdrawal of consent to adoption permitted even though parent filed withdrawal *one* day after consent).

The natural parents' argument that the master erred in considering the expenses of the adoptive parents is without merit. Although we have stated that the proper focus of the hearing is on the natural parents, we do not find the master's consideration of these factors to be reversible error. "[I]n view of the sufficiency of other evidence in the record upon which the ruling can be upheld

[the error was harmless]." *Vigitron, Inc. v. Ferguson,* 120 N.H. 626, 630, 419 A.2d 1115, 1118 (1980); *see Thayer v. Thayer,* 119 N.H. 871, 874, 409 A.2d 1326, 1328 (1979).

*Affirmed.*

BROCK and BATCHELDER, JJ., concurred in the result only; the others concurred.