Hillsborough County Probate Court
No. 83-410

## *In re* KRISTOPHER B.

November 9, 1984

*Gregory H. Smith,* attorney general (*Loretta S. Platt,* assistant attorney general, on the brief and orally), for the State.

*M. Elaine Beauchesne,* Developmental Disabilities Advocacy Center, Inc., of Concord, by brief and orally, for the defendant, Pauline B., mother of Kristopher B.

KING, C.J. The Hillsborough County Probate Court (*Cloutier,* J.) found under RSA 170-C:5, IV (Supp. 1983) that Pauline B. was

incapable of giving proper parental care, and terminated her parental relationship with her son, Kristopher B. Pauline B. appeals the termination of her parental rights. We affirm.

Kristopher B. was born on February 11, 1979, and since March 12, 1980, has been living in a foster home with a couple who have expressed a desire to adopt him. The record indicates that the relationship between the defendant, who is Kristopher's natural mother, and Kristopher has been brief and interrupted. On September 27, 1979, when Kristopher was only nine months old, the defendant lost consciousness while at the office of Kristopher's pediatrician and was taken by ambulance to the Elliot Hospital in Manchester. At that time Kristopher was taken into custody by the State Division of Welfare and placed in a foster home until his return to the defendant in October of 1979.

The defendant's family and the Greater Manchester Mental Health Center called the division of welfare for assistance with the defendant and Kristopher in December of 1979. Both groups were concerned that Kristopher was in danger as a result of the defendant's erratic behavior. On February 1, 1980, the division of welfare petitioned for custody of Kristopher and custody was awarded. Visits were subsequently arranged between the defendant and Kristopher by the division.

Between February and August of 1980, the defendant missed a number of scheduled visits with Kristopher, due to her confusion as to the time and date. On August 22, 1980, the defendant was admitted to the New Hampshire Hospital and has remained there since that time. Gary Lee B. relinquished his parental rights over his son, Kristopher, on January 5, 1983, and the division of welfare filed its petition to terminate defendant's parental rights over Kristopher on March 7, 1983.

At the hearing before the Probate Master (*Harry C. Lichman,* Esq.), the defendant testified that she was not capable of caring for Kristopher and stated that she did not know when she might recover her ability to live outside the hospital and to assume a parental role toward Kristopher. Based upon the testimony of the defendant, her pediatrician, two psychologists, a social worker and Kristopher's foster mother, the master concluded that the defendant's parental rights should be terminated under RSA 170-C:5, IV (Supp. 1983). The probate court ordered the termination of the parent-child relationship between the defendant and Kristopher, and the defendant now appeals the probate court order.

On appeal the defendant asserts that the termination was improper because: (1) the division did not fulfill its duty to assist her prior to terminating her parental rights; (2) her right to due process

under the United States and the New Hampshire Constitutions was violated due to insufficient notice of the factual basis of the proposed termination; (3) hearsay evidence was improperly admitted against her; and (4) RSA 170-C:5, IV (Supp. 1983) is unconstitutionally vague.

We will not consider the defendant's constitutional arguments that the notice given was insufficient, or that the statute applied was vague, because these issues were not raised below. *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983).

The defendant's first argument is that the division of welfare had a statutory obligation to assist the defendant in retaining custody of her son Kristopher under RSA 169-C:2, II(b) (Supp. 1983) and RSA 170-C:5, IV (Supp. 1983). The issue of the division of welfare's obligation to assist the defendant under RSA 169-C:2, II(b) (Supp. 1983) should have been raised during the prior proceedings. No record of the earlier proceedings pursuant to RSA chapter 169-C has been provided on appeal, and issues involving rights or obligations under RSA chapter 169-C are, therefore, not properly before this court.

The defendant also relies upon regulations of the division of welfare concerning termination of parental rights under RSA chapter 170-C to support her claim that the division had a duty to assist her in improving her parenting skills prior to terminating her parental rights. These regulations provide:

> "In termination petitions originated by the division, the social worker has a particular responsibility to prove the grounds of termination and to *insure that every effort has been made to enable the parents to provide a family for their own children.* In this respect, social workers will need to include in their social studies not only evidence to justify the grounds of the petition, but also evidence of attempts, both by the division and other agencies, to work with the parents."

SR 77-45, Revised Adoption Program, SR 77-45, DIVISION OF WELFARE RULES, Section 6103.1(d) (1977) (emphasis added).

■■ We agree that these regulations, as well as the purpose of the termination of parental rights statute, RSA chapter 170-C, require a showing in the record that the division made "every effort" and "worked with the parents" prior to terminating parental rights. *State v. Robert H.* ———, 118 N.H. 713, 719, 393 A.2d 1387, 1391 (1978). This court has recognized, however, that the division of welfare's obligation to make "every effort" to work with the natural parents may be limited by practical considerations, including the

staff and funds available to the division. *In re Diana P.*, 120 N.H. 791, 798, 424 A.2d 178, 182 (1980), *cert. denied*, 452 U.S. 964 (1981). The record in this case supports the division's contention that it has fulfilled its duty to assist the defendant.

The defendant was voluntarily admitted to the New Hampshire Hospital on August 22, 1980, and has continually remained in that treatment facility, with the exception of two discharges, each of which was less than one day in duration. The psychologists, one of whom is a staff member currently treating the defendant at the New Hampshire Hospital, both testified that the defendant must resolve other personal and mental problems before attempting to assume the responsibilities of a parent. At the hearing before the master the defendant was diagnosed as suffering from "chronic schizophrenia undifferentiated."

The legislature has relied upon the professional opinion of psychiatrists or psychologists to prove mental illness for termination of parental rights under the statute. RSA 170-C:5, IV (Supp. 1983). This legislative deferral to the expertise of mental health professionals in proving mental illness is instructive in determining the nature of the division's duty to assist parents suffering from mental illness.

Clearly, it would be unreasonable to require the division of welfare to *treat* mental illness, when it has limited expertise in that field, and when there are other agencies more qualified to handle such problems.

The division's regulations relied upon by the defendant allow for "other agencies" to work with the parents. It was necessary and proper, in this case, for the division of welfare to rely upon the care and treatment of the defendant by a mental hospital, and to allow that institution to determine whether visits with Kristopher, or parenting classes for the defendant, were appropriate or helpful.

██ We will not interpret RSA 170-C:5, IV (Supp. 1983), or the division of welfare regulations, SR 77-45, Revised Adoption Program, SR 77-45, DIVISION OF WELFARE RULES, Section 6103.1(d) (1977), to impose the further duty upon the division to undertake the treatment of the mental illness of parents with diagnosed mental abnormalities. In cases of mental illness, reliance on another agency with an expertise in the treatment of such disorders is a reasonable alternative for the division to pursue. In this case the division has met its statutory duty to assist the defendant prior to petitioning for the termination of her parental rights, and has complied with its regulations, by arranging visits between defendant and her son and by relying on another State agency, the New Hampshire Hospital, to

undertake the treatment of her mental disorder. Such reliance by the division reflects a proper allocation of its resources.

The defendant's second claim is that the admission of testimony during the hearing concerning the records of the division of welfare and the New Hampshire Hospital was improper and violated her right to due process. The basis of the defendant's objection was that the records of the division and the hospital were hearsay and were not testified to by those people who had originally entered the reports. The defendant's objection referred to the statutory section concerning the admission of evidence at the hearing, which provides:

> "The court's finding with respect to grounds for termination shall be based upon clear and convincing evidence, provided that relevant and material information of any nature, including that contained in reports, studies or examinations, may be admitted and relied upon to the extent of its probative value. When information contained in a report, study or examination is admitted in evidence, *the person making such a report, study or examination shall be subject to both direct and cross-examination if he is residing or working within the State, or if he is otherwise reasonably available.*"

RSA 170-C:10 (emphasis added).

This section of the statute requires the testimony of the person originally making a report, if that person is reasonably available. The record below does not indicate whether the people actually making the reports for the years 1973 through 1980 at the New Hampshire Hospital, or those individuals entering reports for the years 1980 through 1983 with the division of welfare, were present in the State or otherwise reasonably available. Instead, testimony was offered by the current custodian of the division of welfare records and by the treating physician at the New Hampshire Hospital.

■■ In view of the fundamental right of parents to maintain relationships with their children, *In re Fay G.*, 120 N.H. 153, 156, 412 A.2d 1012, 1015 (1980), this court will insist upon compliance with the requirements for admission of evidence at termination of parental rights hearings pursuant to RSA 170-C:10. Further, our requirement that the basis for terminating parental rights must be proven beyond a reasonable doubt, *State v. Robert H.* ———, 118 N.H. 713, 716, 393 A.2d 1387, 1389 (1978), mandates that the evidence forming the basis of termination be admitted only when it complies with statutory safeguards.

■ Therefore, the evidence concerning the defendant's history with the New Hampshire Hospital, prior to 1980, and her history with the division of welfare, were improperly admitted because the individuals originally recording the information did not testify, and the record does not show whether or not those pc.sons were residing or working in the State, or otherwise reasonably available.

■ Although the admission of this evidence was error, there was sufficient evidence in the record to support the termination of the defendant's parental rights without resort to the records of the defendant's complete history with the division or with the hospital. Under these circumstances the error was harmless, as an examination of the record produced at the hearing will show.

At the hearing below the master found that, "beyond a reasonable doubt . . . Pauline is and will continue to be incapable of giving the child proper parental care and protection for a longer period of time than it would be wise or prudent to leave the child in an unstable or impermanent environment."

■ In reviewing a hearing record this court will uphold a master's finding unless it is unsupported by the evidence, or erroneous as a matter of law. *In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984). In order to prove mental illness or deficiency, the statute requires proof of: (1) the existence of mental illness or deficiency; and (2) a present and future inability to provide a child with proper parental care for a longer period of time than it would be prudent to leave a child in an unstable or impermanent environment. RSA 170-C:5, IV (Supp. 1983). Mental illness, for purposes of termination of parental rights, must be proved by the testimony of two psychologists or psychiatrists. *Id.*

Testimony at the hearing by two psychologists, based upon their own observations of the defendant, established that she is mentally ill and is unable to care for Kristopher. Further, the defendant testified that she is not presently capable, nor does she know when she might be capable, of caring for Kristopher. Both psychologists testified that it could be two years or longer before the defendant would be capable of being a parent to Kristopher.

The second psychologist indicated that a year to a year-and-one-half was the longest time a child of Kristopher's age should be kept in an impermanent environment. This court has recognized that "psychological bonding" to foster parents occurs after two to three years of foster care. *In re Diana P.*, 120 N.H. 791, 796, 424 A.2d 178, 181 (1980), *cert. denied*, 452 U.S. 964 (1981). According to the second psychologist, within a year to a year-and-one-half Kristopher would bond to his foster parents, making them his psychological parents.

No conflicting testimony was offered by the defendant on any of these points. At the time of the hearing Kristopher had been in the care of the same foster family for three years.

 Since the dominant consideration of the court in termination proceedings must be the welfare of the child, *id.* at 798–99, 424 A.2d at 182, the question of terminating the defendant's parental relationship with her son necessitates a balancing of her fundamental rights as a parent against Kristopher's best interest. The record indicates that the court's termination of the defendant's parental rights resulted from a proper balancing of the parent's and child's interests, despite the defendant's expressed love for her son and her desire to remain his parent. There is sufficient support in the record for the master's findings, and his conclusions do not constitute errors of law. *In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984).

Having upheld the defendant's objections to the admission of hearsay evidence as not permitted under the statute, RSA 170-C:10, we need not reach her constitutional due process argument.

The defendant argues that the probate court improperly terminated her parental rights because the division of welfare failed to prove that her continued parental relationship with Kristopher would result in specific harm to him. In *In re John and Jane Doe*, 123 N.H. 634, 643, 465 A.2d 924, 930 (1983), we held:

"where there is no evidence of mental illness as manifested by child abuse by the parent, the probate court must make explicit findings beyond a reasonable doubt, supported by the record, as to the *detrimental effect of the parent's mental illness on the child*, so as to require termination of parental rights."

(Emphasis added.)

 While we agree with the defendant's argument that the detrimental effect on a child of a parent's mental illness must be proven in order to terminate parental rights under RSA 170-C:5, IV (Supp. 1983), we note that many different factual settings may provide such proof. In the present case, the detrimental effect of the defendant's mental illness on the child was clearly indicated by her own testimony as well as by the testimony of two psychologists. The specific harm to the child in this case was caused by the defendant's continued inability to live outside of a mental institution or to provide any care for her son for the foreseeable future.

 The master made a finding that the defendant was incapable of giving her son proper parental care, but he did not explicitly

state the detrimental effect upon Kristopher B. of the defendant's incapabilities. Under the standard established in *In re John and Jane Doe supra*, the master's failure to make explicit findings of specific harm to the child would require a remand for additional findings. We hold, however, that the evidence in this case would compel any rational fact-finder to find specific harm to the child caused by the defendant's mental illness. Therefore, it is not necessary to remand for explicit findings of detriment to Kristopher B. in this case.

Accordingly, we affirm the probate court's termination of the parent-child relationship between Pauline B. and her son, Kristopher B.

*Affirmed.*

All concurred.