**In the Matter of the Petition for the ADOPTION OF S. E. D.**

**No. 7456.**

District of Columbia Court of Appeals.

Submitted June 18, 1974.

Decided Aug. 15, 1974.

Karl W. Carter, Jr., Washington, D. C., for appellant.

John E. Kloch, Washington, D. C., for appellees.

Before YEAGLEY and HARRIS, Associate Judges, and QUINN, Associate Judge, Retired.

PER CURIAM:

This appeal is from a decree of the Family Division of the Superior Court approving the adoption of a child by its maternal grandparents (petitioners). The natural father appeals from that decree, claiming, in essence, that it was error for the adoption to be ordered without his consent. We affirm.

The prospective adoptee was born in July of 1969. On July 22, 1971, the child's mother was killed by a shot fired by the child's father. From that time to the present, the child has lived with, and been supported by, the petitioners. The father's sworn written consent to the adoption was obtained from him while he was incarcerated in D.C. jail.

The father's main contention is that his consent was procured by fraud and was therefore invalid. The testimony of the child's grandmother, who procured the consent, was directly contrary to the father's on the issue of fraud.

■ The trial court made the following findings of fact with respect to the father's consent:

. . . . . .

3. That the consent of the natural father was duly obtained and admittedly executed by him;

4. That his consent was given voluntarily, knowingly, and without coercion;

5. That said consent is in full compliance with the requirement of statute;

6. That neither the natural father nor his sister are credible witnesses . . . .

As these findings make very clear, the trial court rejected the father's contention that his consent was procured by fraud. Since the findings are supported by the record and are not clearly erroneous, the father's contention on this issue must necessarily fail.

■ As to the father's attempt to withdraw his consent at the adoption hearing, we hold that such an attempt was ineffectual. The statute (D.C.Code 1973, § 16–304) provides that:

(a) A petition for adoption may not be granted by the court unless there is filed with the petition a written statement of consent . . . .

. . . . .

(B) from the living parent of the prospective adoptee, if one of the parents is dead . . . .

Although the Circuit Court was interpreting a predecessor statute to D.C.Code 1973, § 16–304 when it said:

> . . . Congress intended that consent of a parent once given and acted upon should not be withdrawn without cause. . . . [In re Adoption of a Minor, 79 U.S.App.D.C. 191, 194, 144 F. 2d 644, 647 (1944).]

we feel its language is equally applicable to the present law. *See* In re Adoption of a Minor Child, 127 F.Supp. 256 (D.D.C. 1954); Durivage v. Vincent, 102 N.H. 481, 161 A.2d 175 (1960).

As in the cases cited, *supra,* the petitioners were entitled to and did rely on the executed consent of a parent. That consent was signed on August 30, 1971, by the father, and it was not until March 15, 1972, in his Answer to Petition for Adoption, that he formally indicated his desire to revoke that consent. What the court said in In re Adoption of a Minor, *supra* 79 U.S. App.D.C. at 197, 144 F.2d at 650, is as applicable here:

> It is apparent that if in particular cases the unstable whims and fancies of natural [parents] were permitted, first, to put in motion all the flow of parental love and expenditure of time, energy and money which is involved in adoption, and then, as casually, put the whole process in reverse, the major purpose of the statute would be largely defeated.

■ The claim of the father that it was error for the court to deny him access to the sealed report on the proposed adoption, which was prepared by the Social Rehabilitation Administration, is without foundation. The only reference made by him as to when or how such a request was made is that it was an "oral request . . . denied by the Clerk of the Court . . . ." More importantly, D.C.Code 1973, § 16–311 places the opening of sealed records within the discretion of the court, and the father has not shown an abuse of that discretion.

■ His contention that the court should have found the prospective adoptee to be a neglected child and should have appointed a guardian ad litem, is totally without merit. The child, who was two years old at the time of the mother's tragic death, has lived with petitioners since then, and the record contradicts any suggestion of neglect.

■ The trial court found that "it would not be in the best interest of the child-adoptee for the Court to deny the [prayers] of the petitioners." That finding, being supported by the weight of the evidence, the judgment of the trial court is

Affirmed.