**In re: D.E.D., Appellant.**

**No. 94–FS–555.**

District of Columbia Court of Appeals.

Argued Dec. 14, 1995.
Decided March 11, 1996.

D.E.D., pro se.

Sonia A. Bacchus, Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, were on the Motion by the District of Columbia, for Summary Affirmance.

Before STEADMAN, FARRELL and REID, Associate Judges.

FARRELL, Associate Judge:

D.C.Code § 16–311 (1982) provides in relevant part:

> From and after the filing of the petition [for adoption], records and papers in adoption proceedings shall be sealed. They may not be inspected by any person, including the parties to the proceeding, except upon order of the court, and only then when the court is satisfied that the welfare of the child will thereby be promoted or protected.

Appellant, the "child" under this statute, was born in 1957 and adopted in 1959. In 1993, she applied for a court order permitting her to inspect the records of her adoption. She asserted, what for present purposes we must assume is true, that neither her biological parents (whose identity she knows) nor her adoptive parents oppose the request. The trial court, apparently construing § 16–311 to require a particularized showing of how inspection would "promote[ ]" the welfare of the child, denied the request on the ground that appellant "seeks merely to physically peruse the file for the sake of doing so, but has no additional need of information contained in the file." We vacate the trial court's order and remand for further consideration, because we do not read the statute as barring inspection by an adult adoptee asserting her own interest ("welfare") in inspection where—on the present record at least—each of the parents concerned has consented.

## I.

Appellant, thirty six years old at the time, moved under § 16–311 to be allowed to examine the record of her adoption maintained by Associated Catholic Charities, Inc. (Catholic Charities). Catholic Charities operated St. Anne's Infant and Maternity Home where appellant assertedly had spent much of her infant life before adoption. The motion stated that appellant had "a strong and healthy desire and curiosity to learn more about her adoption proceedings and her stay at St. Anne's" following her birth. Attached to the motion were letters from appellant's biological mother and adoptive mother consenting to the adoption, and a similar letter from her putative natural father, who, however, did not admit paternity. Appellant alleged as well that her adoptive father, while unwilling to execute a formal consent, had not "indicated that he would file an objection." She also wrote a letter to the court explaining her request:

> The reason is simple: The first nine months of my life are a blank to me. I want to fill in those blanks. All I know i[s] that I was at an orphanage run by Catholic Charities. I don't know what I ate, who fed me, how I was taken care of, whether I got sick, whether I cried a lot, nothing. I want to know as much as possible.

The trial court held the request in abeyance while directing Catholic Charities "to inspect its records to determine whether inspection of the adoption file by the adoptee would promote the welfare of the adoptee" and to report to the court accordingly. In its report, Catholic Charities stated that, although its "policy" was that "our agency records are confidential and not made available for client inspection," it had examined appellant's record and thereafter furnished her with "non-identifying information" about her adoption. It had also contacted her by telephone "to determine any further questions she ha[d] about her adoption and natural parents," but that she responded "that she does not have further specific questions," desiring only "to personally inspect the records." Catholic Charities therefore informed her that it could not allow inspection in these circumstances.

Upon receipt of the agency's report, the trial court denied appellant's request in a brief written order, which noted that Catholic Charities had "already provided to the adoptee all non-identifying information about her adoption and natural parents." Beyond this, it "appear[ed to the court] that the adoptee seeks merely to physically peruse the file for the sake of doing so, but has no additional need of information contained in the file." That showing, even if all of the parents concerned had consented to inspection, was inadequate in the court's view to justify breaching of the seal imposed by § 16–311.

## II.

The District of Columbia defends the trial court's ruling on the ground that a person seeking inspection under § 16–311 must demonstrate that her welfare would be promoted if she were allowed to inspect her adoption records.[1] This requires a particularized showing of benefit, the District argues, otherwise the test reduces to simple consent of the affected parties. And if consent were the criterion for inspection, the legislature would have written a different statute, not one permitting inspection—as does this one—"only then when the court is satisfied that the welfare of the child will thereby be promoted or protected." Moreover, the statute commits unsealing to the discretion of the trial court, *In re Adoption of S.E.D.*, 324 A.2d 200, 202 (D.C.App.1974), and refusal to allow inspection sought merely in a general quest for information, in the District's view, cannot be an abuse of that discretion.[2]

Since discretion must be exercised in accordance with law, *see Johnson v. United States*, 398 A.2d 354, 365 (D.C.App.1979), the issue before us is the proper construction of § 16–311. The District's reading of the statute as requiring a particularized showing of need by the adoptee, regardless of other circumstances, is not compelled nor do we even think it is the most sensible reading of the statute. First of all, the necessary condition of inspection is that the welfare of the child be "promoted or protected." § 16–311. The disjunctive phrase "or protected" implies strongly that inspection may be permitted even though it does not affirmatively "promote[ ]" the welfare of the child. Moreover,

the essential concern of the statute is to protect "the welfare of the *child* " (emphasis added). The drafters' choice of word reflects the intent to protect those persons who *as minors* cannot be expected to assert their own welfare in regard to inspection of the adoption record. Appellant, an adult, falls outside of that class.[3] While others as well—the birth parents, for example—have an interest in the shield provided by the statute, it is not evident why consent of all the parents does not address that interest without demanding a particularized showing of need when it is the adoptee herself who desires inspection.

The legislative history confirms that the core purpose of the statute was to protect adopted children from the potential stigmatizing effect of disclosure of facts about their birth status. *See, e.g.*, S.R. No. 1034, 75th Cong. 1st Sess. 3 (1937) (purpose of predecessor statute was "to protect the adoptee from possible future embarrassment and humiliation which might result from facts concerning his adoption"); H.R. No. 1348, 83rd Cong., 2nd Sess. 3 (1954) (purpose of companion statute to present § 16–311 dealing with use of adoption records in collateral proceedings was "protection of the interests of the child," pointing out that "the records of licensed child-placing agencies frequently deal with the family problems of children and particularly with children born out of wedlock, and ... such children face great difficulties in overcoming such initial handicap"). Where the child, now very much an adult, requests disclosure only to herself and with the consent of all others affected, that purpose is fully respected.

1. Associated Catholic Charities was not a party to the proceedings below (although it responded to the trial court's request for a report) and has filed no submission in this court. Its position, as conveyed to us at oral argument by the District, is that it will comply with § 16–311 however it is interpreted. Since the point is not contested, we assume for present purposes that the records in question are subject to § 16–311.

2. The District thus distinguishes this case from *In re C.A.B.*, 384 A.2d 679 (D.C.App.1978), where we remanded for a full evidentiary hearing on the request for inspection by an adoptee who, now an adult, did not know and sought to learn the identity of her natural parents.

3. Related statutory provisions support this reading. Under § 16–301(a), "any adult or child" is eligible for adoption. The statute as a whole uses the word "adoptee" when it refers in an inclusive sense to the person being adopted. But "child" is used when a provision is directed only to a minor adoptee, *see* § 16–304(e), or when the word is used to describe the relationship of an individual to his or her parents, *see* §§ 16–312(a), –313. Thus the use of the word "child" in § 16–311 rather than "adoptee" is, within the statutory scheme, most naturally read as referring to minors.

Of course, the trial court must be sure that the necessary consents to the adoptee's request have been given. In this case, that task has not been accomplished. The District points out that the trial court initially ordered that *notarized* letters of the adoptive and birth parents be placed in the record, and that as yet appellant has not furnished those letters. In its discretion, the trial court may require whatever proof it thinks necessary to insure the authenticity of the consents, including live testimony. We therefore remand the case to the trial court for the limited but necessary purpose of establishing the agreement of appellant's parents, birth and adoptive, to her inspection request.

*So ordered.*