*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-FS-538

IN RE G.D.L., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(BKS-117-16)

(Hon. Yvonne M. Williams, Trial Judge)

(Argued September 16, 2019                    Decided January 2, 2020)

*G.D.L.*, pro se.

*Melissa Colangelo*, with whom *Abraham Sisson* was on the brief, for amicus curiae Children's Law Center.

Before FISHER, BECKWITH, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant G.D.L. seeks review of an order denying his request for access to unredacted records relating to his adoption, including his original birth certificate. We vacate and remand for further proceedings.

**I.**

The following facts appear to be undisputed. Appellant G.D.L. was born and adopted in the District of Columbia in the mid-1960s. In 2000, G.D.L.'s biological mother contacted G.D.L., and the two began to develop a close relationship. G.D.L. then also got to know his biological mother's family, including her siblings, G.D.L.'s cousins, and G.D.L.'s grandparents. Through these relationships G.D.L. learned his biological father's identity, and he communicated with at least one member of his paternal family. In 2011, G.D.L. learned through a paternal uncle that his biological father did not wish to have contact with G.D.L. G.D.L. respected his biological father's wish and has had no contact with his biological father.

G.D.L.'s mother died in 2001, leaving G.D.L. her personal records and diaries. Those materials were extensive, but few covered G.D.L.'s birth and subsequent adoption proceedings. In 2016, G.D.L filed a petition requesting a copy of his original birth certificate on file with the District of Columbia Department of Health, the Superior Court's records of his adoption proceedings, and adoption-related documents in the possession of the child-placement agency.

The trial court initially granted G.D.L.'s motion in part. The trial court did not specifically address either the request for an order directing the Department of Health to disclose G.D.L.'s original birth certificate or the request for disclosure of the Superior Court's adoption records. Rather, the trial court focused exclusively on records held by the child-placement agency. The trial court appeared to assume, however, that the child-placement agency would have a copy of the original birth certificate. Although the trial court focused on records held by the child-placement agency, it relied on a statute apparently addressing disclosure of court adoption records. D.C. Code § 16-311 (2019 Supp.) (addressing disclosure of "the petition, records and papers in adoption proceedings"). *See In re D.B.*, 133 A.3d 561, 562 (D.C. 2016) (noting questions whether § 16-311 applies to adoption records held by child-placement agencies and whether D.C. Code § 4-1405 (2012 Repl.) applies to such records). Section 16-311 precludes disclosure in the absence of a finding that "the welfare of the child will thereby be promoted or protected." D.C. Code § 16-311. The trial court concluded, however, that the protections of that provision were inapplicable to G.D.L. because G.D.L. was no longer a minor. The trial court therefore viewed itself as free to balance the relevant interests in deciding the motion for disclosure. In order to "protect [G.D.L.'s] birth father's privacy as much as possible," the trial court directed the child-placement agency to give G.D.L. redacted

copies of the original birth certificate and "adoption records," omitting his biological father's name and any "information related to" his biological father.

G.D.L. sought reconsideration, arguing among other things that (1) the trial court did not address the request for an order directing the Department of Health to disclose the original birth certificate; (2) the trial court did not address the request for disclosure of the Superior Court's adoption records; and (3) with respect to the agency's records, the trial court applied the wrong standard and erroneously required redaction of the agency's records. The trial court vacated its original order and issued a new order. The trial court reiterated its understanding that it was required to "protect the birth father's right to privacy as much as possible." The trial court again did not explicitly address the requests for an order to the Department of Health directing disclosure of the original birth certificate or for direct disclosure of the Superior Court's adoption records. Rather, the trial court appeared to assume that the agency would have access to the original birth certificate and the Superior Court's adoption records, and directed the agency to disclose redacted versions of those documents, omitting "identifying information related to the birth father." Finally, the trial court also directed the agency to disclose its records, similarly redacted.

According to G.D.L., the child-placement agency subsequently provided G.D.L. with eighty pages of copied documents, all of which were in the agency's files. Those documents included a redacted copy of the original birth certificate and some copies of court records.

## II.

G.D.L. challenges (1) the trial court's failure to directly release to G.D.L. unredacted Superior Court records relating to the adoption; and (2) the trial court's failure to direct the Department of Health to give G.D.L. an unredacted copy of his original birth certificate. G.D.L. does not raise a claim on appeal with respect to the redacted agency records, so we do not address that issue. Similarly, although the pertinent statutes refer to inspection of records, D.C. Code §§ 4-1405(c) (2012 Repl.), 7-231.21(h) (2019 Supp.), 7-210(c) (2018 Supp.) (repealed), 16-311, G.D.L. requested copies of records. The trial court granted the request for copies in part. Because no one has raised the issue, we have no occasion to address the possible distinction between a right to inspect and a right to obtain a copy. *Compare, e.g.*, *Direct Mail Serv. v. Registrar of Motor Vehicles*, 5 N.E.2d 545, 546-47 (Mass. 1937)

("The right to inspect commonly carries with it the right to make copies without which the right to inspect would be practically valueless."), *with, e.g.*, *Acosta v. Local Union 26, UNITE HERE*, 895 F.3d 141, 143-46 (1st Cir. 2018) (concluding under particular statutory scheme that right to inspect did not confer right to copy). Finally, we emphasize that we are addressing only the issue of G.D.L.'s right of access to the records at issue, which otherwise remain sealed.

**A.**

We turn first to G.D.L.'s request for access to unredacted Superior Court records relating to his adoption. We conclude that further proceedings are necessary with respect to that request.

**1. Meaning of "Child" in § 16-311.**

As previously noted, § 16-311 governs access to "the petition, records and papers" in adoption proceedings in Superior Court. Those documents "shall be sealed" and "may not be inspected . . . except upon order of the court, and only then when the court is satisfied that the welfare of the child will thereby be promoted or protected." D.C. Code § 16-311. Relying on a decision of this court, *In re D.E.D.*,

672 A.2d 582, 584 (D.C. 1996), the trial court interpreted the word "child" in § 16-311 to be limited to those who are minors at the time of the motion for disclosure. Although the trial court's reliance on *In re D.E.D.* for this conclusion was quite understandable, we conclude that *In re D.E.D.* is better read more narrowly.

In *In re D.E.D.*, D.E.D., who was an adult at time of the request, sought access under § 16-311 to the records of her own adoption. 672 A.2d at 583. D.E.D.'s adoptive mother, biological mother, and putative biological father all consented. *Id.* at 583, 584-85. D.E.D.'s adoptive father did not file a formal consent but had not indicated that he would file an objection. *Id.* at 583. The trial court denied access, concluding that D.E.D. had failed to demonstrate a need to review her adoption records. *Id.*

This court vacated the trial court's ruling. 672 A.2d at 585. We pointed out that § 16-311 did not require a showing of particularized need, but rather only a finding that the child's welfare would be promoted *or* protected. *Id.* at 584. We held that where an adult seeks disclosure only to herself and with the consent of all other affected persons, the purpose of § 16-311 "is fully protected." *Id.* We therefore remanded the case for the trial court to determine whether D.E.D.'s biological and adoptive parents all consented. *Id.* at 585.

It is true that there is language in *In re D.E.D.* suggesting more broadly that the word "child" in § 16-311 is most naturally read as referring to minors, and that adoptees who are adults fall outside § 16-311's "welfare" requirement. 672 A.2d at 584 & n.3. *In re D.E.D.* did not definitively rule, however, that the "welfare" requirement is categorically inapplicable to an adoptee who is or has become an adult. *Id.* at 584-85. So expansive a holding would have surprising consequences: for example, a third party could seek access to the adoption records of someone who had become an adult, and the trial court could grant such access even if doing so would be contrary to the welfare of the adoptee. For the reasons that follow, we conclude that the word "child" in § 16-311 extends to adoptees who are or have become adults.

We decide issues of statutory interpretation de novo. *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019). In interpreting statutory text, "[w]e first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *Id.* (internal quotation marks omitted). In determining the correct reading of statutory language, we consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation. *E.g.*, *J.P. v. District of Columbia*, 189 A.3d 212, 219 (D.C. 2018).

Considered in isolation, the word "child" is ambiguous. It can refer to an individual who is chronologically a minor, but it can also refer to an individual of any age who stands in a familial relation (biological or legal) to the individual's parents. *See, e.g.*, *Black's Law Dictionary* 290 (10th ed. 2014) (defining "child" as "1. An unemancipated person under the age of majority . . . . 4. A son or daughter."). Put concretely, G.D.L. is chronologically no longer a child, but he is still the child of his biological and adoptive parents. We therefore must turn to other considerations to determine the meaning of "child" in § 16-311.

When we look to the use of the word "child" in other D.C. Code provisions relating to adoption, we do not find clarity. In places "child" is used in an apparently chronological sense, and in places it is used in an apparently familial sense. *Compare, e.g.*, D.C. Code § 16-301(a) (2012 Repl.) (referring to adoption of "any adult or child"), *with, e.g.*, D.C. Code § 16-312 (2012 Repl.) (adoption "establishes the relationship of natural parent and natural child"). On the other hand, construing the word "child" in § 16-311 to apply to adoptees of all ages does serve the "paramount" purpose of the adoption statutes as a whole: the best interests of adoptees. *In re M.M.D.,* 662 A.2d 837, 859 (D.C. 1995). Specifically, the sealing of adoption records is primarily intended to protect the privacy interests of adoptees.

*In re D.E.D.*, 672 A.2d at 584 (relying on committee report relating to prior statute governing access to adoption records).  Such privacy interests surely persist into adulthood.

In sum, we hold that the term "child" in § 16-311 extends not only to minors but also to adoptees who are adults at the time of the request for disclosure.  We interpret *In re D.E.D.* to stand for the narrower proposition that -- at least in the absence of extraordinary circumstances -- the trial court should not deny a request for disclosure where the request is made by an adult adoptee and all other affected persons have consented.  672 A.2d at 584.

## 2.  Standard Applicable to Requests Under § 16-311.

G.D.L. and amicus curiae Children's Law Center (CLC) argue that, in determining whether to grant a request for disclosure under § 16-311, the trial court may consider only the adoptee's welfare, granting such a request if doing so would be in the adoptee's interests and denying the request if doing so would not be in the adoptee's interests.  We disagree, for three reasons.

First, by its terms, § 16-311 establishes a prerequisite to disclosure of adoption records:  a trial court may permit disclosure only after finding that doing so would "promote[] or protect[]" the adoptee's welfare.  Section 16-311 does not say that the welfare of the adoptee is the only relevant consideration.

Second, we have previously held that § 16-311 gives trial courts discretion as to whether to permit disclosure of adoption records.  *In re S.E.D.*, 324 A.2d 200, 202 (D.C. 1974).  We have further indicated that the trial court, in exercising that discretion, should consider not only the welfare of the adoptee but also the interests of other affected individuals, including the biological parents.  *In re C.A.B.*, 384 A.2d 679, 679-80 (D.C. 1978).

Third, focusing exclusively on the welfare of the adoptee would lead to unacceptable consequences.  For example, such an approach would seemingly preclude the trial court from redacting adoption records to protect privacy interests of third parties, no matter how weighty those privacy interests were, as long as disclosing completely unrelated records would to any degree promote or protect the adoptee's interests.

In sum, a trial court ruling on a motion for disclosure under § 16-311 must make a threshold determination that disclosure would promote or protect the adoptee's welfare. If the trial court so determines, the trial court has discretion as to whether to disclose the adoption records in whole or in part. In exercising that discretion, the trial court must consider the interests of all affected persons, and the trial court is not limited to considering only the welfare of the adoptee.

Section 16-311 does not provide guidance about how to balance interests in deciding whether to permit disclosure of court adoption records. Our case law reflects one important principle, though: the welfare of the adoptee is the "paramount" purpose of the adoption statutes. *In re M.M.D.,* 662 A.2d at 859. We view that principle as fully applicable to determinations under § 16-311. Thus, the most important consideration is whether disclosure would be in the interests of the adoptee. Moreover, *In re D.E.D.* indicates that -- at least barring unusual circumstances -- a trial court will have no reason to doubt that disclosing an adoption record would be in the interests of an adult who seeks disclosure of his or her own adoption record. 672 A.2d at 584.

Conversely, the interests of the biological parents, though certainly relevant, are by no means necessarily dispositive. As G.D.L. points out, biological parents do

not even have an initial assurance of privacy under the relevant provisions. *See, e.g.*, D.C. Code § 16-314(a) (2019 Supp.) (adoptive parents can choose to leave in place original unsealed birth certificate naming biological parents). It follows that they have no absolute right of privacy in connection with a later motion to disclose. More generally, as previously noted, the adoption statutes generally give greater weight to the interests of the adoptee than to the interests of biological parents.

### 3. Application of § 16-311 in This Case.

In light of the foregoing, the case must be remanded for the trial court to further consider the motion for disclosure under § 16-311. First, the trial court did not specifically address Superior Court adoption records, instead apparently assuming without any clear basis that the agency would be in possession of all relevant court records. On remand, the trial court must issue an order specifically addressed to Superior Court adoption records.

Second, the trial court did not explicitly address G.D.L.'s interests in obtaining unredacted records. As we have noted, however, G.D.L.'s interests are entitled to great weight.

Third, the trial court was of the view that it was required to protect the biological father's privacy interests to the greatest extent possible. To the contrary, the biological father's interests are relevant but may not be treated as necessarily dispositive. Relatedly, the trial court did not explain how redacting the records to remove identifying information would actually serve the biological father's privacy interests, particularly given that G.D.L. apparently already has information about his biological father's identity. In fact, because the biological father did not participate in this proceeding, the trial court did not know whether the biological father had any objection to disclosure of the information at issue. On remand, the trial court should take reasonable steps to provide the biological father with notice and an opportunity to be heard with respect to the motion for disclosure. *Cf. In re D.E.D.*, 672 A.2d at 585 (remanding for consideration of positions of biological and adoptive parents with respect to adoptee's motion for disclosure).

**B**.

G.D.L. further argues that the trial court abused its discretion by failing to order the Department of Health to give him a copy of his unredacted original birth certificate. This issue could possibly become academic on remand, if a copy of the original birth certificate is in the Superior Court file and the trial court ends up

determining that it would be appropriate to disclose an unredacted version of the birth certificate under § 16-311. We address the issue briefly, however, because it might well arise on remand, depending on whether a copy of the original birth certificate is in the Superior Court's adoption file and on how the trial court resolves the motion for disclosure under § 16-311.

D.C. Code § 16-314(a) provides that, when a child is adopted, the original birth certificate will be sealed, unless the adoptive parents choose otherwise. The sealed birth certificate may be opened only by court order or by the Department of Health for certain administrative purposes. D.C. Code § 16-314(a); *see also* D.C. Code § 7-231.21(h) (2019 Supp.) (in case of adoption, sealed original birth certificate may be disclosed only by court order, for administrative purposes, or pursuant to regulation). Citing now-repealed provisions from an earlier version of the Vital Records Act, D.C. Code § 7-231.01 et seq. (2019 Supp.), G.D.L. argues that he has an absolute right to receive an unredacted copy of the original birth certificate. We disagree.

An earlier version of the Vital Records Act was in effect when G.D.L.'s motion was filed in 2016. D.C. Code § 7-201 et seq. (2018 Repl.). We need not decide whether the old or the new provisions govern the current motion. Under

either statutory scheme, no specific criteria are established to govern a trial court's decision whether to permit access to an original birth certificate that was sealed in connection with an adoption. D.C. Code § 7-210(c)(2) (2018 Supp.) (repealed); D.C. Code § 7-231.21(h) (2019 Supp.). G.D.L. argues that -- under the now-repealed provisions -- he is entitled to obtain a copy of his original birth certificate upon a showing that he has "a direct and tangible interest" in his birth certificate. In support of that argument, G.D.L. relies on D.C. Code § 7-220(a) (2018 Supp.; repealed). That provision, however, addresses the general authority of the Health Department to disclose vital records, not the special requirements applicable to sealed birth certificates.

CLC argues that a trial court deciding whether to grant an adoptee's motion for disclosure of an original birth certificate held by the Department of Health should apply the same standard applicable under D.C. Code § 16-311 to a motion for disclosure of Superior Court adoption records. We agree. To the extent the trial court needs to address the issue on remand, the trial court therefore should apply those standards in deciding whether to provide G.D.L. with access to an unredacted original birth certificate from the records of the Department of Health.

For the foregoing reasons, we vacate the order denying in part G.D.L.'s motion for disclosure of unredacted court adoption records and his unredacted original birth certificate, and we remand the case for further proceedings.

*So ordered.*